## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOREEN CAHILL, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>KEURIG GREEN MOUNTAIN, INC., and BED BATH & BEYOND, INC.<br><br>                 Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Doreen Cahill ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Keurig Green Mountain, Inc. ("Keurig") and Bed Bath & Beyond ("BBB") (collectively, "Defendants") for the sale of defective Keurig K-Supreme, K-Supreme Plus, and K-Supreme SMART Single Serve Coffee Makers, (collectively, the "Coffee Makers") and its Proprietary Liquid Descaling Solution (the "Descaling Solution") (collectively, the "Products"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## FACTS COMMON TO ALL CLAIMS

**A.    Keurig's Coffee Makers Cannot be Properly Maintained Without Becoming Inoperable**

1.      This is a class action lawsuit against Defendant Keurig Green Mountain, Inc. for the manufacture and sale of certain K-Supreme Single Serving Coffee Makers (the "Coffee Makers"),[1] all of which suffer from identical defects in design, and for the manufacture and sale

---

[1] The Coffee Makers include the Keurig K-Supreme, Supreme Plus, and Supreme Plus SMART.

of its bottled Descaling Solution.  This lawsuit is also against Defendant Bed Bath & Beyond for the sale of the Coffee Makers and the Descaling Solution.  The defect pertains to the process through which the Coffee Makers descale (clean) themselves, which, if followed according to instructions provided by Keurig on its Descaling Solution, completely disables the Coffee Makers.  The defect makes it so the Coffee Makers cannot be used or properly maintained and renders them unsuited for their principal and intended purpose.

2.      Keurig's Coffee Makers are designed to have water flow through them.  All water naturally contains minerals, and over time these minerals accrue inside the Coffee Makers.  To help maintain them, then, Keurig recommends that these mineral deposits be flushed out of the Coffee Makers through a process known as "descaling."[2] Every 250 uses or every 3 months, whichever comes first, the Coffee Makers will display an alert either through an indicator light or on a digital display telling the owner to descale them using Keurig's proprietary bottled liquid Descaling Solution.  However, when the descaling procedure is followed according to the instructions provided on either the Descaling Solution bottle, or the Coffee Makers' respective support webpages, the Coffee Makers will stop functioning.  The inadequate instructions provided on the Descaling Solution bottle are pictured below:

---

[2] https://www.keurig.com/Keurig%C2%AE-Descaling-Solution/p/Keurig-Descaling-Solution:Default_color

FOR KEURIG® BREWERS WITH A WATER RESERVOIR
Empty water from reservoir. Remove Keurig® Water Filter. Descaling procedure takes about 45 minutes (75 minutes for K-Duo™ brewers).

**Step 1: Cleansing Rinse**
- Press the power button to turn the brewer off.
- Pour the entire bottle of Keurig® Descaling Solution into the water reservoir. Then fill the empty bottle with water and pour into the water reservoir. Press the power button to turn the brewer back on.
- Run a rinsing brew: Place a large ceramic mug on the drip tray, lift and lower the brewer handle, select the largest brew size. Press the BREW button (if applicable). Pour out mug into the sink.

**Step 2: Internal Tank Soak**
- Repeat rinsing brew process until the add water light illuminates. Let the brewer stand for 30 minutes while still on.
- After 30 minutes, discard any residual solution and rinse the water reservoir thoroughly.

**Step 3: Fresh Water Rinse**
- Fill the reservoir with fresh water to the max fill line.
- Place the large ceramic mug on the drip tray and run a rinsing brew using the largest brew size. Do not use a K-Cup® pod. Pour the contents of the mug into the sink.
- Using the largest brew size, run at least 12 rinsing brews. You may need to refill the water reservoir.

*The instructions provided with the Descaling Solution fail to warn the consumer that following the instructions will cause the Coffee Makers to cease functioning.*

3.      The problem occurs because the Coffee Makers allow the water reservoir to empty completely during the descaling process without stopping to tell the user to add more water, causing the Coffee Makers to overheat and trip a practically inaccessible thermal switch within them, rendering them unusable.

4.      The only way for the Coffee Makers to be brought back to life is to disassemble them and use a paper clip to depress a miniscule reset button in the center of the thermal switch. This defect renders the Coffee Makers essentially inoperable for the average consumer.

5.      This defect effects all three of Keurig's K-Supreme Coffee Makers (K-Supreme, K-Supreme Plus, K-Supreme SMART), as evidenced by the myriad self-help videos on YouTube.com, all of which identify the descaling process as the culprit behind the tripped thermal switches inside the Coffee Makers, pictured below.

6.      All three models of the K-Supreme are substantially similar.  The Coffee Makers use the same thermal switch and descaling routine, such that any differences between the models

3

(reservoir tank size, brew strength and heat options, and wi-fi capability) are immaterial to this action.



*A consumer points to the thermal switch located deep within the Keurig K-Supreme[3]*



*A consumer points to the thermal switch in the K-Supreme Plus Coffee Maker[4]*

---

[3] https://www.youtube.com/watch?v=IdE_4NIQEro

[4] https://www.youtube.com/watch?v=GTkJpF8TKG4&t=2s



*A paper clip is used to reset the thermal switch in the Keurig K-Supreme Plus SMART[5]*

**B.     Keurig Knew or Should Have Known about the Defect, and its Misrepresentations Affected Consumers Throughout the Country**

7.      Keurig has known or should have known about the defect in the descaling process and the inadequate instructions provided on its website and the Descaling Solution bottle since the release of the original K-Supreme Coffee Maker.  Each of the Coffee Makers' webpages are rife with one and two-star reviews from around the country pointing out the problems caused by following Keurig's descaling instructions.  Below is a sample from the K-Supreme, K-Supreme Plus, and K-Supreme Plus SMART product pages on Keurig.com:

Over 2 years ago, a consumer wrote a review titled "Broke while descaling" which stated that their K-Supreme "completely stopped working while I was descaling using Keurig's solution…no power at all."

Over a year ago, a consumer wrote a review titled "shut off after descale" in which they state that their K-Supreme "won't even turn on after completing a descale.  It smoked and then shut off."

---

[5] https://www.youtube.com/watch?v=hKNaKyvzGCw

Over 10 months ago, another consumer left a review about their K-Supreme, stating that it "worked great until today when the descale light came on and I ran the descaling solution through it.  Now it won't turn on at all…"

Over 2 years ago, a consumer wrote a review of their K-Supreme Plus titled "2nd K Supreme Died" and stated "[j]ust like the others, descale then just died, just like the first K Supreme."

Over a year ago, another consumer left a review on the K-Supreme Plus page, stating that after the descale "process the machine would not turn on again to brew coffee."

Over 10 months ago, another consumer wrote a review about their K-Supreme Plus titled "Serious Issues with Descaling Process" in which they sang a familiar tune, stating that the Product "does not come out of the descaling process correctly and appears to overheat; as a result, machine will not power back on." They went on, "I hope Keurig is paying attention…and that this defect is resolved…all need to be aware of the descaling problem."

Over 4 months ago, another consumer complained that their K-Supreme Plus "shut down and no longer works" after "third attempt" at "horrible" descale process.

Over 2 months ago, another consumer wrote a review of their K-Supreme Plus SMART coffee maker titled "Serious Design Flaw." They stated that this was their second K-Supreme Plus SMART, and that "[b]oth lasted two months (the second is a warranty replacement) until the machines indicated it was time to descale.  I followed the process step by step using Keurig descaling solution and each machine became inoperable.  Display blacked out and will not power on at all."

Less than a month ago another K-Supreme Plus SMART owner complained that their now broken Product "was the second K-Supreme Plus SMART brewer we've had this

year...Followed the proper descaling process using Keurig brand descaling solution, but the descale message never cleared and brewers soon completely stopped working after."

8.     Like most companies, Keurig presumably cares about its reputation and regularly monitors on-line customer reviews because they provide valuable data regarding quality control issues, customer satisfaction, and marketing analytics.  One-star and two-star reviews like those referenced above should cause anyone within Keurig's management to take notice, because negative reviews are sometimes indicators of serious problems or defects, and—just like any other properly run company—Keurig is presumably sensitive to the reputation impact of negative on-line reviews.  Hence, Keurig's management knew or should have known about the above-referenced consumer complaints shortly after they were each posted.

9.     The consumer outcry extends beyond the confines of Keurig's own website, and Keurig knew about it.  A quick Google search provides an indication of just how prevalent the problem is: if one were to type "Keurig K-Supreme won't turn on" into the search bar, the first suggested search from Google would append "after descaling" to the query.  Reviews posted to other major retailers, such as Amazon.com and BestBuy.com also mention the descaling program defect.  The forum page dedicated specifically to Keurig products on Reddit.com is spilling over with conversations about how descaling according to the directions provided by Keurig causes K-Supreme Coffee Makers to break.

10.    Keurig knew about complaints posted throughout the web (or, at the very least, should have known) because online reputation management ("ORM" for short) is now a standard business practice among most major companies, and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products.

11.    "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially

damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[6]

12.     Amazon.com, Reddit.com, BestBuy.com and YouTube.com are wellsprings of consumer feedback about products, and Keurig should have been aware that customers were expressing their frustration with the Coffee Makers' descaling routine defect on all four sites.

13.     On Amazon there are 122 one-star and 35 two-star reviews of the Keurig K-Supreme which mention "descale" or "descaling." An April 1, 2022 review of the original K-Supreme captures customer sentiment well: "I have had this machine for three weeks and it has already been descaled 2x and completely died once.  I really wanted a cup of coffee so I searched the internet for the model and death.  Turns out there is a reset-able thermostat built in that kills the machine if water stops flowing.  Smart, right? Nope.  It requires a manual reset.  I'm talking take the covers off and poke the thermostat with a paper clip manual reset."

14.     Another Amazon review, this one for the K-Supreme Plus dated September 12, 2021 states "I should have googled this product before purchasing it.  Unfortunately I did so after the fact.  I started the descaling process and it shut off and won't turn back on.  It's too late for a return."

15.     A March 8, 2022 Amazon review of the K-Supreme Plus describes very clearly what Keurig knew by that point: "This brewer has a massive design flaw… Once you have to descale the machine, it usually ends up dying because the internal safety thermostat triggers (to prevent overheat / fire).  Once it triggers, the machine is dead and you need to break the machine apart to reset it.  Taking this model apart is pretty much impossible without breaking

---

[6] https://en.wikipedia.org/wiki/Reputationmanagement#Online_reputation_management.

it…<u>I've escalated this to Keurig product managment [sic] and you can find videos online showing you the part that causes the problem.</u>"

16.     A March 25, 2022 Amazon review, this time for the K-Supreme Plus SMART model states "If you Google 'keurig supreme descaling problem' you'll see what many others have discovered.  There's a defect in the thermal switch that just bricks the unit."

17.     Another Amazon review of the K-Supreme Plus SMART, dated December 26, 2021 states "[d]o not run the descaling procedure or it will overheat and then you're done.  New machine needed.  I would avoid this model completely."

18.     BestBuy.com is host to similar complaints about the Coffee Makers' descaling defect.

19.     In one review of the K-Supreme posted over 4 months ago and titled "Up in smoke" the consumer complained that "I started a descaling process <u>following the instructions off of the Keurig website</u> and the thing literally went up in smoke…If these things can't even survive the descaling process then they shouldn't be on the shelves." An agent for <u>Keurig responded to this complaint</u>, asking the consumer to call Keurig's "Consumer Care Team".

20.     In one review of the K-Supreme Plus posted over 4 months ago and titled "Return after descaling" the consumer complained that "the machine would not power back on after descaling.  I had to return it back to the store." An agent for Keurig responded to this complaint as well, pointing the consumer to the "Consumer Care Team" again.

21.     This continues on www.Reddit.com/r/Keurig, a section of the website dedicated entirely to discussions about Keurig products, where a post from over a year ago titled "Keurig K-Supreme Plus – Failure after Descale, Won't turn on" garnered 82 comments from consumers whose Coffee Makers had also broken after using the descaling function.  One comment on the post thoroughly describes the issue with the thermal switch and how to fix it – a process which is

"not for the faint of heart." Another user was so sick of the problem that they ended up drilling an access hole in the side of their Product so that they could readily reset the thermal switch should it inevitably trip in the future.[7]

22.     These complaints, and the hundreds more like them, all tell a similar story: Keurig's Coffee Makers' displayed an alert that directed consumers to descale their Coffee Makers in order to maintain them and extend their lifespan.  However, rather than extending the Coffee Makers' useful life, attempting to descale the Coffee Makers in accordance with the instructions provided on the Descaling Solution bottle in fact utterly disabled them.

23.     Keurig's advertising and marketing of the Coffee Makers and the Descaling Solution is false and misleading and omits material information.  As many of the abovementioned comments make clear, Keurig knew that if consumers followed their descaling procedure instructions it was likely the Coffee Makers would be rendered unusable.

24.     Keurig had further notice of the defect as a result of Product returns, replacements, or requests for refunds.

25.     Plaintiff, and the class of consumers she seeks to represent, reasonably expect that maintenance procedures will extend the lifespan of their Coffee Makers, not shorten them.

26.     Keurig impliedly represented that descaling was necessary to ensure the continued functioning of the Coffee Makers.

27.     Keurig impliedly made representations that the product would continue to function after the descaling procedure was completed according to their instructions.

---

[7]

https://www.reddit.com/r/keurig/comments/oqtqn0/keurig_ksupreme_plus_failure_after_descale
_wont/?utm_source=share&utm_medium=ios_app&utm_name=iossmf



*Document included with each Coffee Maker that states the descale light "will illuminate when*

*your brewer __needs__ to be descaled."*

28.     Keurig made express representations that descaling would "preserve the long-term health" [8] of the Coffee Makers and keep them running at "peak performance." Pictured below are pages from documents included with each Coffee Maker:



29.     Keurig also sells a "3 Month Brewer Care Kit" and a "6 Month Brewer Care Kit" which both include the Descaling Solution along with statements that the kits will "help extend

---

[8] https://www.keurig.com/Keurig%C2%AE-Descaling-Solution/p/Keurig-Descaling-Solution:Default_color

the life of your brewer", thus expressly and impliedly equating use of the Descaling Solution with greater Product lifespan.[9]

30.    Keurig made these representations about maintainability and yet failed to warn Plaintiff, and all others similarly situated, about the defect with the descaling procedure which made impossible to actually maintain the Coffee Makers.

31.    Plaintiff, and the class of consumers she seeks to represent, would not have purchased these Coffee Makers had they known that attempting to maintain their Coffee Makers in accordance with instructions provided on the bottled Descaling Solution created a sizeable risk of rendering the Coffee Makers inoperable.

32.    Plaintiff, and the class of consumers she seeks to represent, would not have purchased Keurig's bottled Descaling Solution had they known that attempting to descale the Coffee Makers would render them inoperable.

33.    Plaintiff, and the class of consumers she seeks to represent, do not desire replacement Coffee Makers which will only overheat and break again, and which cannot be properly maintained.

34.    As a result of Keurig's misrepresentations, warranties, and omissions, Plaintiff, and the class of consumers she seeks to represent, purchased the Coffee Makers with the expectation that they would have significantly longer lifespans than they did.

35.    Had Keurig not made the misrepresentations, warranties, and omissions alleged herein, Plaintiff, and the class of consumers she seeks to represent, would not have purchased the Coffee Makers or would not have paid as much as they did for them.  Thus, Plaintiff, and the

---

[9] https://www.keurig.com/cleaning&maintenance/c/cleaning101?cm_sp=cleaning-maintenance-_-Top-Nav-_-maintenance101

class of consumers she seeks to represent, suffered an injury in fact and lost money or property as a result of Keurig's wrongful conduct.

**C.      Bed Bath & Beyond Knew Or Should Have Known The Products Were Not Suitable As Coffee Makers And That Following The Instructions On The Descaling Solution Would Render The Coffee Makers Inoperable**

36.      Bed Bath & Beyond sells the Coffee Makers and Descaling Solution both in stores and online.  As such, Bed Bath & Beyond had notice from consumers about Keurig's defective Products through multiple points of contact.

37.      Bed Bath & Beyond knew or should have known about the inadequate Descaling Solution instructions and the defect in the Coffee Makers because (1) consumers returned the defective Products to Bed Bath & Beyond's brick and mortar stores, (2) consumers returned the defective Products through Bed Bath & Beyond's online store, and (3) consumers wrote reviews about the Products' defects on Bed Bath & Beyond's online store.

38.      In fact, Bed Bath & Beyond had ample notice about the defects because reviews for the Coffee Makers and the Descaling Solution on the Bed Bath & Beyond online store are pulled directly from their respective product pages on Keurig's website.  Thus, all the Product reviews posted on Keurig's website, a portion of which were detailed above, are similarly visible on Bed Bath & Beyond's website. For example:

Over 10 months ago, a consumer wrote a review titled "Broke after 4 months on first descale." They noted that they "followed the [descaling] directions to a tee" and yet the K-Supreme still broke.  The consumer ended the review by stating that "I've read many other reviews elsewhere of the same powering down/breaking issue."

Over a year ago, another consumer wrote about how their K-Supreme Plus stopped working, stating: "[d]escale message came on, attempted to descale and now my machine won't turn back on.  It's completely dead."

Over 7 months ago, another consumer complained that their K-Supreme Plus worked at first, "then we descaled and like magic, it quit working.  [W]ould not turn on.  <u>Instructions to descale on the website are incomplete.</u>"

Over 2 months ago, another review was published to Bed Bath & Beyond's K-Supreme Plus page, this one titled "Stopped working after descaling."

Over 6 months ago, a consumer complained that their K-Supreme Plus SMART "[l]asted less than 3 months" and that it broke when "I got a notice to descale it and as I started the process it completely stopped working."

39.     Plaintiff brings this action against Keurig individually and on behalf of a class of all other similarly situated purchasers of the Coffee Makers for equitable relief and to recover damages for: (i) breach of express warranty pursuant to U.C.C. § 2-313; (ii) breach of implied warranty of merchantability pursuant to U.C.C. § 2-314; (iii) unjust enrichment; (iv) negligent misrepresentation; (v) fraud by omission; (vi) violation New York's General Business Law ("GBL") § 349; (vii) violation of GBL § 350; and (viii) violation of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

40.     Plaintiff also this action against BBB individually and on behalf of a class of all other similarly situated purchasers of the Coffee Makers for equitable relief and to recover damages for: (i) breach of implied warranty of merchantability pursuant to U.C.C. § 2-314; (ii) unjust enrichment; (iii) violation New York's General Business Law ("GBL") § 349; (iv) violation of GBL § 350; and (v) violation of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

**D.     Plaintiff's Experience**

41.     In or around February 2022, Plaintiff Cahill purchased the Keurig K-Supreme Single Serve Coffee Maker for her personal use from a Bed Bath & Beyond in New York.

Plaintiff Cahill made this purchase with the expectation that the Product would be suitable as a coffee maker and would last for years.

42.     However, the Coffee Maker did not even make it beyond the 4-month mark before it unceremoniously broke.  One day, the Coffee Maker had a light illuminated next to text reading "Descale", this was an alert that it was time to "descale" the Product.  Plaintiff Cahill subsequently purchased Keurig's Descaling Solution.  As the Coffee Maker was being descaled according to the instructions provided on the Descaling Solution bottle, the Coffee Maker released a cloud of smoke and ceased functioning.  It has remained inoperable since that time.

43.     Ms. Cahill called Keurig's customer service line to inform them about the issue, and they acknowledged that they knew about it and offered to replace her Coffee Maker with an identical one.  She declined this offer.

44.     Ms. Cahill would not have purchased the Coffee Maker had she known about the defect in its design.  None of the labels on the Coffee Maker's or Descaling Solution's packaging mention this defect, though Keurig is most certainly aware of the defect because of the countless user reviews on their website and product returns which have taken place.  Ms. Cahill does not desire a replacement Coffee Maker because it would bear the same defect her original one had, and eventually be rendered useless during the descaling process.  The defective Coffee Maker Plaintiff Cahill purchased from Bed Bath & Beyond was not worth remotely what Keurig and BBB charged for it.

## PARTIES

45.     Plaintiff Doreen Cahill resides in Hartsdale, New York and intends to remain there, and is therefore domiciled in New York.

46.     Defendant Keurig Green Mountain, Inc. is a Delaware Corporation with its principal place of business at 5 Pilgrim Park Road, Waterbury, Vermont.  Keurig manufactures,

markets, and distributes the Coffee Makers throughout the United States, including in New York.
Keurig works with and supplies coffee makers and cleaning supplies to retail stores in New
York, such as Bed Bath & Beyond.

47.     Defendant Bed Bath & Beyond, Inc. is a New York Corporation with its principal
place of business at 650 Liberty Avenue, Union, New Jersey.  Bed Bath and Beyond sells
domestic merchandise and home furnishings online and in-stores throughout the United States.
As of this writing, Bed Bath & Beyond operates 953 stores in the United States, Mexico, Canada,
and Puerto Rico.[10] Bed Bath & Beyond sold, offered to sell, advertised, delivered, and
transported Keurig products, including the Coffee Makers and the Descaling Solution.

48.     At all times relevant hereto, Bed Bath & Beyond affirmatively participated in
and/or adopted the false and misleading advertising and marketing claims about the Coffee
Makers and the Descaling Solution.  Among other things, Bed Bath & Beyond is responsible for
(1) displaying the Descaling Solution and its false packaging claims on its store shelves and
website, (2) displaying the Coffee Makers on its store shelves and website and impliedly
warranting that the Coffee Makers would continue to function after being maintained, (3)
utilizing false and misleading in-store advertisements for the Products, (4) reviewing and
approving false and misleading advertising materials for promoting the sale of the Products,
including advertisements that bore Bed Bath & Beyond's name, and (5) selling the Coffee
Makers and the Descaling Solution to end users.

## JURISDICTION AND VENUE

49.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
1332(d) because this is a class action where there are more than 100 members and the aggregate

---

[10] https://en.wikipedia.org/wiki/Bed_Bath_%26_Beyond

amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and Plaintiff, as well as other members of the proposed class, are citizens of a state different from Keurig and BBB.

50.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New York such that Defendants have significant, continuous, and pervasive contacts with the State of New York.

51.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff Cahill is a citizen of New York, Defendants do substantial business in this District, and Plaintiff purchased her Product in this District.

## CLASS ALLEGATIONS

52.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Coffee Makers during the applicable statute of limitations period (the "Coffee Maker Class").  Specifically excluded from the Class are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by the Defendants, and its heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

53.     Plaintiff also seeks to represent a class defined as all persons in the United States who purchased the Descaling Solution during the applicable statute of limitations period (the "Descaling Solution Class").

54.     Plaintiff Doreen Cahill also seeks to represent a subclass consisting of Class Members who purchased the Coffee Makers and who reside in New York (the "New York Coffee Maker Subclass" or, the "Coffee Maker Subclass").

55.     Plaintiff Doreen Cahill also seeks to represent a subclass consisting of Class Members who purchased the Descaling Solution and who reside in New York (the "New York Descaling Solution Subclass" or, the "Descaling Solution Subclass").

56.     **Numerosity**.  The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands or even hundreds of thousands of Members in the Class and in the Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiff, it is known by Defendants and may be determined through discovery.

57.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclass and predominate over any questions affecting only individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

a.      Whether Defendants made false and/or misleading statements to the consuming public concerning the Coffee Makers' lifespan and the use of the Descaling Solution to maintain them;

b.      Whether Defendants omitted material information to the consuming public concerning the Coffee Makers' lifespan and the use of the Descaling Solution to maintain them;

c.      Whether Defendant Keurig's labeling and packaging for the Coffee Makers and the Descaling Solution is misleading and/or deceptive;

d.      Whether Defendants engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Coffee Makers and the Descaling Solution;

e.      Whether Defendants' representations concerning the Coffee Makers'
descale function were likely to deceive a reasonable consumer;

f.      Whether Defendants' omissions concerning the Coffee Makers' defective
descale function were likely to deceive a reasonable consumer;

g.      Whether Defendants falsely represented to consumers that use of the
Descaling Solution in Coffee Makers' descale regime would extend the
life of the Coffee Makers;

h.      Whether Defendants advertised the Coffee Makers and Descaling
Solution with the intent to sell them not as advertised;

i.      Whether Defendants falsely advertised the Coffee Makers and the
Descaling Solution;

j.      Whether Defendants made and breached express and/or implied
warranties to Plaintiff and Class and Subclass Members about the Coffee
Makers and the Descaling Solution;

k.      Whether Defendants' representations, omissions, and/or breaches caused
injury to Plaintiff and Class and Subclass Members; and

l.      Whether Plaintiff and Class and Subclass Members are entitled to
damages.

58.     **Typicality**.  Plaintiff's claims are typical of the claims of the other Members of
the Class and Subclass in that, among other things, all Class and Subclass Members were
deceived (or reasonably likely to be deceived) in the same way by Defendants' false and
misleading advertising claims about the use of the descale function and the Descaling Solution to
extend the Coffee Makers' lifespan.  All Class and Subclass Members were comparably injured

by Defendants' wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

59.     **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff have no interests that are antagonistic to those of the Class or Subclass.

60.     **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

61.     In the alternative, the Class and Subclass may also be certified because:

m.     the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendants;

n.    the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

o.    Defendants have acted or refused to act on grounds generally applicable to the Class and to the Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of the Subclass as a whole.

## COUNT I
**(Breach of Express Warranty, U.C.C. 2-313)**

62.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

63.    Plaintiff Doreen Cahill brings this claim individually and on behalf of the Members of the Proposed Descaling Solution Class and Descaling Solution New York Subclass against Keurig.

64.    As the designer, manufacturer, marketer, distributor, and/or seller of the Descaling Solution, Keurig issued an express warranty by representing to consumers at the point of purchase that use of the Descaling Solution through the descaling process would extend the life of the Coffee Makers.  Specifically, Keurig represented that descaling was a necessary procedure and that purchasing the Descaling Solution and following the instructions written on the Descaling Solution bottle was part of that procedure.  Keurig further represented on its website, and on the pamphlets which came with the Coffee Makers, and on the Descaling Solution packaging that descaling would help to maintain the Coffee Makers and extend their

useful life.

65.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and Members of the Class and Subclass.

66.     In fact, maintenance of the Coffee Makers through use of the descaling program did not conform to Keurig's representations about extending the life of the Coffee Makers, because following the directions on the Descaling Solution bottle, or on Keurig's website, did not extend the lifespan of the Coffee Makers, but shortened it.

67.     On August 12, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Keurig a warranty notice letter that complied in all respects with U.C.C. 2-607.  The letter provided notice of breach of express and implied warranties.  The letter was sent via e-mail to Keurig's counsel advising Keurig that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

68.     As a direct and proximate result of Keurig's breach, Plaintiff and Members of the Class and Subclass were injured because they: (1) paid money for Descaling Solution that was not what Keurig represented; (2) were deprived of the benefit of the bargain because following the descaling routine shortened, rather than extended, the life of the Coffee Makers; and (3) were deprived of the benefit of the bargain because the Descaling Solution they purchased had less value than if Keurig's representations about maintenance were truthful.  Had Keurig not breached the express warranty by making the false representations alleged herein, Plaintiff and Class and Subclass Members would not have purchased the Descaling Solution or would not have paid as much as they did for them.

## COUNT II

### (Breach of Implied Warranty of Merchantability, U.C.C. 2-314)

69.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiff Doreen Cahill brings this claim individually and on behalf of the Members of the Descaling Solution and Coffee Maker Classes and the New York Coffee Maker and Descaling Solution Subclasses against Bed Bath & Beyond.

71.     Bed Bath & Beyond routinely engages in the distribution, and/or sale of coffee makers and coffee maker cleaning products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

72.     Plaintiff and Members of the Class and Subclass were consumers who purchased Keurig's Coffee Makers and Descaling Solution from Bed Bath & Beyond for the ordinary use of such products.

73.     By selling Coffee Makers for the purpose of making coffee, and the Descaling Solution for the purpose of  maintaining the Coffee Makers, Bed Bath & Beyond impliedly warranted to consumers that the Coffee Makers were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

74.     However, the Coffee Makers and the Descaling Solution were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

75.     Plaintiff Cahill and Class members purchased the Coffee Makers and Descaling Solution in reliance upon Defendants' skill and judgment and the implied warranties of fitness

for the purpose.

76.     The Coffee Makers and Descaling Solution were not altered by Plaintiff Cahill or the Class members.

77.     The Coffee Makers and Descaling Solution were defective when they left the control of Bed Bath & Beyond.

78.     On August 25, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Bed Bath & Beyond a warranty notice letter that complied in all respects with U.C.C. 2-607. The letter provided notice of breach of implied warranties.  The letter was sent via certified mail to Bed Bath & Beyond's New York designated agent and to their principal place of business. The letter advised Bed Bath & Beyond that it was in violation of the U.C.C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

79.     As a direct and proximate result of Bed Bath & Beyond's breach, Plaintiff and Members of the Subclass were injured because they paid money for Coffee Makers and Descaling Solution that would not pass without objection in the trade or industry under the contract description.

### **COUNT III**
**(Unjust Enrichment)**

80.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

81.     Plaintiff brings this claim individually and on behalf of the Members of the Nationwide Descaling Solution and Nationwide Coffee Maker Classes and New York Coffee Maker and Descaling Solution Subclasses against both Defendants.

82.     Defendants have been unjustly enriched in retaining the revenues derived from

Plaintiff and Class Members' purchases of the Coffee Makers and Descaling Solution bottles.

Retention of those monies under these circumstances is unjust and inequitable because

Defendants failed to disclose that the Coffee Makers and Descaling Solution were unfit for

maintenance and long-term use.  Defendants' misrepresentations and/or material omissions

caused injuries to Plaintiff and Class Members because they would not have purchased the

Coffee Makers and Descaling Solution bottles if the true facts were known.

83.     Because Defendants' retention of the non-gratuitous benefits conferred on them

by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to

Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

## COUNT IV
### (Negligent Misrepresentation)

84.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations

contained in all preceding paragraphs of this complaint.

85.     Plaintiff brings this claim individually and on behalf of Members of the

Nationwide Descaling Solution and Nationwide Coffee Maker Classes and New York Coffee

Maker and Descaling Solution Subclasses against Keurig.

86.     Keurig sought to induce Plaintiff and the Class and Subclass members to enter

into a business transaction by advertising and displaying the Coffee Makers and bottles of

Descaling Solution for sale both online and in physical stores.

87.     Keurig made materially inaccurate statements about the Coffee Makers' descaling

regime and how use of the Descaling Solution within that regime would help extend the life of

the Coffee Makers in furtherance of inducing the business transaction.

88.     The information supplied by Keurig contained materially false and misleading

statements and omissions, as alleged above, because the Coffee Makers became inoperable after going through the descaling program in accordance with the instructions provided on the Descaling Solution bottle.

89.     Keurig knew or should have known this information was incorrect, as described and alleged above.

90.     Plaintiff and the Class and Subclass members relied upon Keurig's false and misleading statements and omissions made on its Products' webpages and packaging when making their purchasing decisions.  It was Plaintiff and the Class and the Subclass's reasonable expectation that when maintaining and descaling the Coffee Makers in accordance with the instructions provided on the Descaling Solution bottle that the Coffee Makers would continue to function.

91.     Keurig had a duty of care to accurately and completely convey material information about the Coffee Maker and the Descaling Solution because they sought to induce Plaintiff and the Class and Subclass members to enter into a business transaction.

92.     As a result of Keurig's negligent misrepresentations and omissions, Plaintiff and the Class and Subclass members have suffered damages.

## COUNT V
### (Fraud by Omission)

93.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

94.     Plaintiff brings this claim individually and on behalf of Members of the Nationwide Descaling Solution and Nationwide Coffee Maker Classes and New York Coffee Maker and Descaling Solution Subclasses against Keurig.

95.     This claim is based on fraudulent omissions concerning the Coffee Makers and

the Descaling Solution.  As discussed above, Keurig failed to disclose that the Products had a

design defect that would render the Products worthless and incapable of performing their

principal function.

96.     The false and misleading omissions were made with knowledge of their

falsehood.  Keurig is a nationwide coffee maker manufacturer and distributor who knew of

reports of the Products' defective nature.  Nonetheless, Keurig continued to sell its defective

Coffee Makers and Descaling Solution bottles to unsuspecting consumers.

97.     The false and misleading omissions were made by Keurig, upon which Plaintiff

and members of the proposed Class and Subclass reasonably and justifiably relied, and were

intended to induce and actually induced Plaintiff and members of the proposed Class and

Subclass to purchase the Coffee Makers and Descaling Solution bottles.

98.     Keurig's fraudulent actions caused damage to Plaintiff and members of the

proposed Class and Subclass, who are entitled to damages and punitive damages.

## <u>COUNT VI</u>
**(Violation of New York's General Business Law § 349)**

99.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations

contained in all preceding paragraphs of this complaint.

100.    Plaintiff Doreen Cahill brings this claim individually and on behalf of the

Members of the proposed New York Coffee Maker and Descaling Solution Subclasses against

Defendants.

101.    Defendants committed deceptive acts and practices by employing false,

misleading, and deceptive representations and/or omissions about the maintainability of the

Coffee Makers to mislead consumers into believing that using the Descaling Solution and

following the descaling protocol would extend the life of the Coffee Makers.

102.    Plaintiff Cahill has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' deceptive acts and practices.  Specifically, Plaintiff Cahill purchased a Keurig Coffee Maker and the Descaling Solution from Bed Bath & Beyond for her own personal use.  In doing so, Plaintiff Cahill relied upon Defendants' false, misleading, and deceptive representations that the Coffee Maker is suitable for use as a coffee maker and could be maintained through use of the Descaling Solution in the descaling procedure.  Plaintiff Cahill spent money in the transaction that she otherwise would not have spent had she known the truth about Keurig's Coffee Makers.

103.    Defendants' deceptive acts and practices were directed at consumers.

104.    Defendants' deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendants knew consumers would purchase Keurig's Coffee Makers and Descaling Solution and/or pay more for them under the false – but reasonable – belief that they were suitable for use as coffee makers and could be maintained with the Descaling Solution, when they could not.

105.    By advertising so prominently that descaling will extend the life of the Coffee Makers, Defendants implicitly concede that information about descaling is material to consumers.  If such information were not material, Keurig would not feature the descaling maintenance information so prominently on the Coffee Makers' webpages and packaging inserts, or feature representations about extending product life on the Descaling Solution product page.  As a result of its deceptive acts and practices, Keurig and Bed Bath & Beyond sold thousands, if not tens of thousands, of Coffee Makers and Descaling Solution bottles to unsuspecting consumers across New York.

106.    If Defendants had advertised the Coffee Makers and Descaling Solution bottles truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members

would not have purchased them or would not have paid as much as they did for them.

107.    As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions, Plaintiff Cahill and other Members of the New York Subclass were injured in that they: (1) paid money for Coffee Makers that were not what Defendants represented; (2) paid money for Descaling Solution bottles that were not what Defendants represented; (3) were deprived of the benefit of the bargain because the Coffee Makers and Descaling Solution bottles they purchased were different than Defendants advertised; and (4) were deprived of the benefit of the bargain because the Coffee Makers and Descaling Solution bottles they purchased had less value than if Defendants' representations about maintainability and the descaling process were truthful.

108.    On behalf of herself and Members of the New York Subclass, Plaintiff Cahill seeks to enjoin Defendants' unlawful acts and practices and recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT VII

### (Violation of New York's General Business Law § 350)

109.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

110.    Plaintiff Doreen Cahill brings this claim individually and on behalf of the Members of the proposed New York Coffee Maker and Descaling Solution Subclasses against both Defendants.

111.    Defendants engaged in a campaign of false advertising with regard to the maintainability of the Coffee Makers to mislead consumers into believing the Coffee Makers are suitable for making coffee, and that use of the Descaling Solution and following the descaling protocol would extend the life of the Coffee Makers.

112.     Plaintiff Cahill has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendants' deceptive acts and practices.  Specifically, Plaintiff Cahill purchased a Keurig Coffee Maker and the Descaling Solution for her own personal use from Bed Bath & Beyond.  In doing so, Plaintiff Cahill relied upon Defendants' false, misleading, and deceptive representations that the Coffee Maker could be maintained through use of the Descaling Solution in the descaling procedure.  Plaintiff Cahill spent money in the transaction that she otherwise would not have spent had she known the truth about Defendants' advertising claims.

113.     Defendants' deceptive acts and practices were directed at consumers.

114.     Defendants' deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendants had not failed to disclose that Keurig's Coffee Makers could not be properly maintained by descaling in accordance with the instructions on the Descaling Solution bottle, Plaintiff and other New York Subclass Members would not have purchased the Coffee Makers and Descaling Solution or would not have paid as much as they did for them.

115.     As a direct and proximate result of Defendants' false, misleading, and deceptive representations and/or omissions Plaintiff Cahill and other Members of the New York Subclass were injured in that they: (1) paid money for Coffee Makers that were not what Keurig represented; (2) paid money for Descaling Solution bottles that were not what Keurig represented; (3) were deprived of the benefit of the bargain because the Coffee Makers and Descaling Solution bottles they purchased were different than Defendants advertised; and (4) were deprived of the benefit of the bargain because the Coffee Makers and Descaling Solution bottles they purchased had less value than if Defendants' representations about maintainability and the descaling process were truthful.

116.     On behalf of herself and Members of the New York Subclass, Plaintiff Cahill

seeks to enjoin Defendants' unlawful acts and practices and recover her actual damages five

hundred (500) dollars per violation, whichever is greater, three times actual damages, and

reasonable attorneys' fees.

## COUNT VIII

### (Violation of the *Magnuson-Moss Warranty Act*, 15 U.S.C. §§ 2301, *et seq.*)

117.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations

contained in all preceding paragraphs of this complaint.

118.     Plaintiff brings this claim individually and on behalf of Members of the

Nationwide Descaling Solution and Nationwide Coffee Maker Classes and New York Coffee

Maker and Descaling Solution Subclasses against Keurig and Bed Bath & Beyond.

119.     The Coffee Makers and Descaling Solutions Bottles are consumer products as

defined in 15 U.S.C. § 2301(1).

120.     Plaintiff and the Class and Subclass members are consumers as defined in 15

U.S.C. § 2301(3).

121.     Keurig and Bed Bath & Beyond are suppliers and warrantors as defined in 15

U.S.C. § 2301(4) and (5).

122.     In connection with the marketing and sale of the Coffee Makers, Defendants

impliedly warranted that the Coffee Makers were fit for use as coffee makers.  The Coffee

Makers were not fit for this purpose because they could not be properly maintained due to the

defect with the descaling program when following the instructions supplied by Keurig on the

Descaling Solution bottles, described in the allegations above.

123.     In connection with the marketing and sale of the Descaling Solution, Defendants

impliedly and expressly warranted that use of the Descaling Solution would help extend the life

of the Coffee Makers, and thus was fit for its intended use.  However, the Descaling Solution

was not fit for use in the care and maintenance of the Coffee Makers because following the

instructions provided on the Descaling Solution bottle rendered the Coffee Makers inoperable.

124.   By reason of Defendants' breach of warranties, Defendants violated the statutory

rights due Plaintiff and the Class and Subclass members pursuant to the Magnuson-Moss

Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and Subclass

members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks

judgment against Defendant as follows:

    a.     For an order certifying the nationwide Class and Subclass under Rule 23 of the

Federal Rules of Civil Procedure and naming Plaintiff as representative of the

Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the

Class and Subclass members;

    b.     For an order declaring that the Defendants' conduct violates the statutes

referenced herein;

    c.     For an order finding in favor of Plaintiff, the nationwide Class, and the Subclass

on all counts asserted herein;

    d.     For compensatory and punitive damages in amounts to the determined by the

Court and/or jury;

    e.     For pre-judgment interest on all amounts awarded;

    f.     For an order of restitution and all other forms of monetary relief;

    g.     For an order awarding Plaintiff and the Class and Subclass their reasonable

attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated: September 1, 2022                        Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Philip L. Fraietta*
          Philip L. Fraietta

Philip L. Fraietta
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:  bscott@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*