**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DOREEN CAHILL and JANET CHRISTMAN on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>    v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>         Defendant. | Case No. 22-cv-7507-CS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS**

Dated:  August 11, 2025

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:   pfraietta@bursor.com

*Class Counsel*

**TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.....................................................................3

    A.    Plaintiffs' Allegations ........................................................................3

    B.    The Litigation History And Work Performed To Benefit The Class......................3

SUMMARY OF THE SETTLEMENT .........................................................................................5

ARGUMENT ........................................................................................................................6

I.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED ......................................................................................................6

    A.    The Percentage Method Should Be Used To Calculate Fees .................................9

    B.    The Reasonableness Of The Requested Fees Is Supported By This Circuit's Six-Factor *Goldberger* Test ........................................................................10

        1.    Time And Labor Expended By Counsel .................................................10

        2.    Magnitude And Complexity Of The Litigation .......................................11

        3.    The Risk Of Litigation .......................................................................11

        4.    The Quality Of Representation .............................................................12

        5.    The Requested Fee In Relation To The Settlement .................................13

        6.    Public Policy Considerations ...............................................................14

    C.    The Requested Attorneys' Fees Are Also Reasonable Under An Optional Lodestar Cross-Check ......................................................................................14

II.    THE REQUESTED SERVICE AWARD REFLECTS PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED ........................16

CONCLUSION....................................................................................................................17

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Arbor Hill Concerned Citizens Neighborhood Assan v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008) ................................................................................. 7, 9

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,
  2002 WL 1315603 (S.D.N.Y. June 17, 2002) ............................................................ 7

*Blum v. Stenson*,
  465 U.S. 886 (1984) .............................................................................................. 15

*Cassese v. Williams*,
  503 F. App'x 55 (2d Cir. 2012) ............................................................................. 15

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................................................. 8

*Clark v. Ecolab, Inc.*,
  2010 WL 1948198 (S.D.N.Y. May 11, 2010) ............................................................ 8

*Davidson v. Cnty. of Nassau*,
  2023 WL 5200223 (E.D.N.Y. Aug. 14, 2023) ........................................................... 2

*deMunecas v. Bold Food, LLC*,
  2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ......................................................... 17

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................... 17

*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ............................................................. 13

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .............................................................................................. 14

*GB ex rel NB v. Tuxedo Union Free School Dist.*,
  894 F. Supp. 2d 415 (S.D.N.Y. 2012) ..................................................................... 7

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43 (2d Cir. 2000) .............................................................................. Passim

*Gruber v. Gilbertson*,
  647 F. Supp. 3d 100 (S.D.N.Y. 2022) ...................................................................... 8

*Hayes v. Harmony Gold Min. Co.*,
 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ........................................................... 2, 8

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 2013 WL 12324362 (S.D.N.Y. Apr. 10, 2013) ......................................................... 11

*In re Beacon Assocs. Litig.*,
 2013 WL 2450960 (S.D.N.Y. May 9, 2013) ........................................................... 7, 9

*In re Citigroup Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013) ...................................................................... 7

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................... 9

*In re Initial Public Offering Secs. Litig.*,
 671 F. Supp. 2d 467 (S.D.N.Y.2009) ........................................................................ 8

*In re Marsh ERISA Litig.*,
 265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................ 11, 13

*In re MetLife Demutualization Litig.*,
 689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................... 13

*In re Nasdaq Market-Makers Antitrust Litig.*,
 187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................ 11

*In re Remeron Direct Purchaser Antitrust litig.*,
 2005 WL 3008808 (D.N.J. Nov. 9, 2005) ............................................................... 12

*In re Sandisk SSDs Litig.*,
 2023 WL 10367607 (N.D. Cal. Dec. 4, 2023) ........................................................ 13

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................................................... 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. litig.*,
 724 F. Supp. 160 (S.D.N.Y. 1989) .......................................................................... 12

*Khait v. Whirlpool Corp.*,
 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ............................................................ 8

*LeBlanc-Sternberg v. Fletcher*,
 143 F. 3d 748 (2d Cir. 1998) .................................................................................... 16

*Luciano v. Olsten Corp.*,
 109 F.3d 111 (2d Cir. 1997) ..................................................................................... 15

*Massiah v. MetroPlus Health Plan, Inc.*,
  2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ........................................................... 14

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010) ...................................................................................... 6

*McMahon v. Olivier Cheng Catering and Events, LLC*,
  2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........................................................... 17

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y. 1984) ........................................................................... 15

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) .................................................................................................. 16

*Moses v. New York Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ................................................................................... 2, 16

*Parker v. Time Warner Entertainment Co., L.P.*,
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ...................................................................... 15

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) .................................................................................................. 15

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) .................................................................................................... 9

*Reyes v. Altamarea Grp.*,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ............................................................ 9

*Reyes v. Summit Health Mgmt., LLC*,
  2024 WL 472841,n.5 (S.D.N.Y. Feb. 6, 2024) .......................................................... 2

*Shapiro v. JPMorgan Chase 7 Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................... 11, 14, 15

*Silverstein v. AllianceBernstein, L.P.*,
  2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013) .......................................................... 8, 9

*Varljen v. H.J. Meyers & Co., Inc.*,
  2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) .............................................................. 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .......................................................................... 7, 9, 10, 14

*Willix v. Healthfirst, Inc.*,
  2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ............................................................... 8

*Yuzary v. HSBC Bank USA, N.A.*,
  2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................................................................ 6

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 3, 4

Fed. R. Civ. P. 23(h) .................................................................................................... 2, 6

## INTRODUCTION

The class action settlement between Plaintiffs Doreen Cahill and Janet Christman ("Plaintiffs") and ("Keurig" or "Defendant"), if finally approved, resolves Plaintiffs' and the Class's claims against Defendant that Keurig Green Mountain, Inc.'s K-Supreme, K-Supreme Plus, and K-Supreme SMART coffee makers (the "Coffee Maker(s)") may experience performance or operational issues when descaled according to the directions supplied with the Coffee Makers or with the Keurig Descaling Solution. The Class Action Settlement (the "Settlement") — preliminarily approved by this Court on June 20, 2025 — provides for the establishment of a non-reversionary $950,000 Settlement Fund from which qualifying class members (defined as Performance Issue Claim Class Members in the settlement agreement) will be entitled to submit a claim to receive a a *pro rata* cash payment. As to the other category of class members (defined as Coffee Maker Purchaser Class Members in the settlement agreement) (together with the Performance Issue Claim Class Members, the "Settlement Class Members"), they shall receive an extended warranty of 12 additional months (24 months total from date of purchase) to make a warranty claim with Defendant based on any defect that caused a loss of power while performing the descaling process.

Obtaining this exceptional relief came with significant risks. Though tens of thousands of complaints had been made to Keurig about the issue, there were significant questions of fact that posed genuine hurdles for Plaintiffs at class certification, summary judgment, and beyond. At the time of the settlement, Keurig was prepared to engage in further fact and expert discovery in anticipation of its forthcoming motion for summary judgment and had made it clear that it would vigorously contest the certification of a litigation class. Rather than put Defendant's arguments to the test and risk everything, Plaintiffs and Class Counsel sought the assistance of a well-respected former federal judge, The Honorable Shira A. Scheindlin (Ret.), and negotiated meaningful relief

for their fellow Class Members.

In light of this exceptional result, Plaintiffs respectfully request, pursuant to Federal Rule of Civil Procedure 23(h), that the Court approve attorneys' fees, costs, and expenses of one-third of the settlement fund, or $316,666.66, as well as a service award of $5,000 each for Plaintiffs for their service as class representatives. *First*, Courts in this Circuit routinely approve fee requests for up to one-third of a settlement fund. *See, e.g., Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award); *see also Davidson v. Cnty. of Nassau*, 2023 WL 5200223, at *10-11 (E.D.N.Y. Aug. 14, 2023) ("'[I]t is very common to seek 33% contingency fees in cases with funds of less than $10 million.'") (citation omitted). *Further*, as the Second Circuit recently held, "clear precedent [in this Circuit] … permits district courts to approve fair and appropriate incentive awards to class representatives." *Moses v. New York Times Co.*, 79 F.4th 235, 253 (2d Cir. 2023) (citations omitted). Indeed, "Courts in this District have regularly approved service awards for individual representative plaintiffs ranging from $1,000 to $10,000." *Reyes v. Summit Health Mgmt., LLC*, 2024 WL 472841, at *6 n.5 (S.D.N.Y. Feb. 6, 2024) (collecting cases). "Other courts have suggested an even broader range of $2,500 to $85,000." Id. at *6 n.5 (citation omitted). In any case, "[h]ere, it is sufficient to note that the proposed award for [Plaintiff] is within either range." *Id*.

For these reasons, and as explained further below, this Court should approve the requested fee and service awards.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiffs' Allegations

Plaintiffs and Settlement Class Members are purchasers of Defendant's Coffee Makers. Plaintiffs allege that the Coffee Makers suffer from performance or operational issues when descaled according to the directions supplied with the Coffee Makers or with the Keurig Descaling Solution.  First Amended Complaint (ECF No. 23) ("FAC") ¶ 1.  Plaintiffs allege that when this issue occurs, the Coffee Makers are rendered entirely inoperable and unable to be fixed by consumers.  *Id.* ¶ 3.  Plaintiffs allege that Keurig knew or should have known about this issue but failed to disclose this fact to consumers, despite receiving complaints about the issue.  *See id.* ¶¶ 7-24.  As such, Plaintiffs allege they are entitled to damages for various violations of New York and California statutes, and common law causes of action.  *Id.* ¶¶ 39-40.

### B.     The Litigation History And Work Performed To Benefit The Class

On September 1, 2022, Doreen Cahill filed a putative class action complaint in the United States District Court for the Southern District of New York.  The complaint alleges that Keurig's K-Supreme, K-Supreme Plus, and K-Supreme SMART coffee makers (the "Coffee Maker(s)") may experience performance or operational issues when descaled according to the directions supplied with the Coffee Makers or with the Keurig Descaling Solution.  (ECF No. 1.).  The complaint was originally brought against both Keurig and Bed Bath & Beyond, Inc.  *Id.*  Bed Bath & Beyond was dismissed from the action on June 7, 2023 and takes no part in this proposed Settlement.  (ECF No. 47).

In response to the complaint, on November 21, 2022, Keurig filed a letter requesting a pre-motion conference regarding its intent to file a motion to dismiss under Fed. R. Civ. P. 12(b)(6). (ECF No. 19).

On December 12, 2022, Ms. Cahill filed a letter in response to Defendant's November 21, 2022 letter.  (ECF No. 21).

The pre-motion conference was conducted on December 19, 2022, and pursuant to which Ms. Cahill filed the operative First Amended Complaint on January 20, 2023, adding Janet Christman as a plaintiff along with claims under California law.  (ECF No. 23).

In response to the Amended Complaint, on March 6, 2023, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 37).  On May 3, 2023, Plaintiffs filed an Opposition to the Motion to Dismiss.  (ECF No. 43).  And on May 3, 2023, Defendant filed a Reply in Support of its Motion to Dismiss.  (ECF No. 44).

The hearing on Defendant's Motion to Dismiss was held on December 20, 2023, during which the Court issued a bench ruling granting in part and denying in part Defendant's motion.  (ECF No. 55).  Plaintiffs were given leave to amend but declined to do so.  (ECF No. 50).

An initial scheduling conference was also heard on December 20, 2023, and the Court issued a Civil Case Discovery Plan and Scheduling Order on December 22, 2023.  (ECF No. 49).

On January 26, 2024, Defendant filed an Answer to the First Amended Complaint, denying the allegations generally and asserting twenty-eight affirmative and other defenses.  (ECF No. 53).

Thereafter, the Parties engaged in discovery, including the exchange of thousands of pages of documents.  Declaration of Philip L. Fraietta ("Fraietta Decl.") ¶ 14.

Throughout the litigation, the Parties discussed the prospect of settlement.  *Id.* ¶ 14.  To that end, the Parties agreed to participate in a private mediation with the Honorable Shira A. Scheindlin (Ret.) of Boies Schiller Flexner, LLP.  *Id.* ¶ 13.  On August 20, 2024, the Parties participated in a full-day mediation with Judge Scheindlin.  *Id.* ¶ 15.  At the conclusion of the mediation session, the Parties had not reached an agreement.  However, the Parties continued to engage in good-faith settlement negotiations after the mediation's conclusion, working jointly on

a Class Action Settlement Term Sheet, which was executed by the Parties on January 7, 2025.  *Id.* ¶ 16.  The Parties then worked jointly on the fuller Settlement Agreement which is attached as **Exhibit 1** to the Declaration of Philip L. Fraietta (the "Settlement").

After reaching an agreement in principle, Class Counsel worked extensively with defense counsel to finalize and memorialize the agreement into a formal Class Action Settlement Agreement, including proposed class notice documents.  Fraietta Decl. ¶ 17.  That process included multiple rounds of redlines and phone calls to discuss proposed edits.  *See id.*  Thus, the formal Settlement Agreement, which was fully executed as of March 10, 2025, was reached as a result of extensive arm's-length negotiations between the Parties and their counsel.  *Id.*

Finally, after finalizing and executing the Class Action Settlement Agreement, Class Counsel prepared Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, which was filed on March 10, 2025.  *Id.* ¶ 18.  The Court preliminarily approved the Settlement on June 20, 2025.  ECF No. 75.

## SUMMARY OF THE SETTLEMENT

The Settlement provides an exceptional result for the class by delivering cash to tens of thousands of individuals (the "Performance Issue Claims Class") who either (1) lodged complaints to Keurig claiming that a Coffee Maker experienced the Defect within the first 12 months of purchase between October 1, 2020 to the date of Preliminary Approval and were not provided with a remedy by Keurig pursuant to its Limited Warranty, or (2) who can demonstrate valid claims that a Coffee Maker manifested operational issues associated with the descaling process.  The Settlement creates a $950,000 non-reversionary cash Settlement Fund, from which each Performance Issue Claim Class Member who submits a simple Claim Form will receive a *pro rata* cash payment.  Settlement ¶¶ 1.36, 2.2(b).

Non-monetary relief in the form of a 12-month extended warranty is also offered to all Persons in the United States (including its states, districts or territories) who purchased one of the Coffee Makers, or Descaling Solution for use with the Coffee Makers, from two years prior to the date of Preliminary Approval up to the date of Preliminary Approval. *Id.* ¶ 2.1.

## ARGUMENT

### I. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND SHOULD BE APPROVED

The requested fee award of $316,666.66, representing one-third of the Settlement Fund, is reasonable and merits approval. Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Here, the Settlement Agreement between the Parties provides that Class Counsel may petition the Court for an award up to one-third of the Settlement Fund. Agreement ¶ 8.1.[1]

In settlement fund cases such as this one, courts in the Second Circuit apply one of two fee calculation methods – the "percentage of the fund" method or the "lodestar" method. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The Court has discretion in choosing which method to employ. *See McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (holding that "the decision as to the appropriate method [is left] to 'the district court,

---

[1] The requested fee award also encompasses unreimbursed litigation costs and expenses. Agreement ¶ 8.1. Reasonable litigation-related costs and expenses are customarily awarded in class action cases and include costs such as filing fees, process server fees, and courier fees. *See, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) ("Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class."). Thus, included in the requested fee award, Class Counsel respectfully seeks reimbursement of $63,142.60 for out-of-pocket costs and expenses in these standard categories. *See* Fraietta Decl. ¶ 26, Ex. 3.

which is intimately familiar with the nuances of the case'") (quoting *Goldberger*, 209 F.3d at 48).

"[T]he trend in this Circuit has been toward the use of a percentage of recovery as the preferred

method of calculating the award for class counsel in common fund cases." *In re Beacon Assocs.*

*Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013). In fact, the "trend" of using the

percentage of the fund method to compensate class counsel is now "firmly entrenched in the

jurisprudence of this Circuit." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y.

2013). As the Second Circuit has stated, the percentage method "directly aligns the interests of

the class and its counsel and provides a powerful incentive for the efficient prosecution and early

resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir.

2005). "In contrast, the 'lodestar create[s] an unanticipated disincentive to early settlements,

tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed

review of line-item fee audits.'" *Id.* (quoting *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*,

2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)). Indeed, the Second Circuit has described

difficulties with the lodestar method:

> As so often happens with simple nostrums, experience with the
> lodestar method proved vexing. Our district courts found it created
> a temptation for lawyers to run up the number of hours for which
> they could be paid. For the same reason, the lodestar created an
> unanticipated disincentive to early settlements. But the primary
> source of dissatisfaction was that it resurrected the ghost of
> Ebenezer Scrooge, compelling district courts to engage in a gimlet-
> eyed review of line-item fee audits. There was an inevitable waste
> of judicial resources.

*Goldberger*, 209 F.3d at 48-49. As a result, "courts in the Second Circuit no longer use the

'lodestar' method for computing attorneys' fees" in fee-shifting cases. *GB ex rel NB v. Tuxedo*

*Union Free School Dist.*, 894 F. Supp. 2d 415, 427 (S.D.N.Y. 2012) (citing *Arbor Hill Concerned*

*Citizens Neighborhood Assan v. County of Albany*, 522 F.3d 182 (2d Cir. 2008)).

Moreover, Courts in this Circuit routinely approve fee requests for one-third of a settlement fund. *See Cicciarella v. Califia Farms, LLC* Case No. 7:19-cv-08785-CS, ECF No. 27 ¶ 15 (awarding attorneys' fees of one third of $750,000 fund); *Carrasco v. Sompo America Insurance Services LLC et al,* Case No. 7-17-cv-07319-CS (awarding "Class Counsel $91,666.66, which is approximately one-third of the Settlement Amount"); *Hayes v. Harmony Gold Min. Co.*, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award, and noting that "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *Gruber v. Gilbertson*, 647 F. Supp. 3d 100, 127 (S.D.N.Y. 2022) (Rakoff, J.) (awarding one-third of $4.649 million settlement fund); *Silverstein v. AllianceBernstein, L.P.*, 2013 WL 7122612, at *9 (S.D.N.Y. Dec. 20, 2013) (awarding one-third of $2.98 million settlement fund and noting that one-third is "consistent with the norms of class litigation in this circuit"); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y.2009) (awarding one-third of the $510 million net settlement fund); *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6–7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund); *Clark v. Ecolab, Inc.*, 2010 WL 1948198, at *8–9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund); Fraietta Decl., Ex. 15 (*Taylor v. Trusted Media Brands, Inc*., Case No. 16-cv-01812-KMK Hearing Tr. at 17:21-22, (S.D.N.Y. Feb. 1, 2018)) ("*TMBI* Hearing Tr.") ("As I said, it's one-third.  That's typically approved by other courts."). Indeed, as courts in this Circuit have noted, fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer

agreements." *Reyes v. Altamarea Grp.*, 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (citing

*Arbor Hill*, 522 F.3d 182); *see also Silverstein*, 2013 WL 7122612, at *9 (same).

### A.      The Percentage Method Should Be Used To Calculate Fees

As mentioned *supra*, the "trend in this Circuit has been toward the use of a percentage of

recovery as the preferred method of calculating the award for class counsel in common fund cases."

*In re Beacon Assocs. Litig.*, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013).  In contrast, the

lodestar approach is more often applied in federal fee-shifting cases, particularly civil rights

actions.  *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  As Judge Cote has

stated, the percentage method is preferred for several reasons:

> First, it relieves the court of the cumbersome, enervating, and often
> surrealistic process of evaluating fee petitions.  Second, it decreases
> plaintiff lawyers' incentive to run up the number of billable hours
> for which they would be compensated by the lodestar method.  And
> finally, it decreases the incentive to delay settlement because the fee
> for the plaintiffs' attorneys does not increase with delay.

*Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (internal

citations omitted); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL

2230177, at *16 (S.D.N.Y. July 27, 2007) ("From a public policy perspective, the percentage

method is the most efficient means of compensating the work of class action attorneys.  It does not

waste judicial resources analyzing thousands of hours of work, where counsel obtained a superior

result.").

Under the circumstances of this case – wherein Class Counsel received an exceptional

result for the Settlement Class – the Second Circuit prefers the percentage method.  *See Wal-Mart*

*Stores, Inc.*, 396 F.3d at 121 (noting that the percentage method "directly aligns the interests of the

class and its counsel and provides a powerful incentive for the efficient prosecution and early

resolution of litigation").  In contrast, "the lodestar create[s] an unanticipated disincentive to early

settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in gimlet-eyed review of line-item fee audits." *Id.* at 121 (quotation omitted).

**B.    The Reasonableness Of The Requested Fees Is Supported By This Circuit's Six-Factor *Goldberger* Test**

The Second Circuit has articulated six factors that should be considered when determining the reasonableness of a requested percentage to award as attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. These factors support Class Counsel's fee request.

**1.    Time And Labor Expended By Counsel**

Class Counsel first began working on this case in June of 2022 by investigating reports of Keurig's K-Supreme Coffee Makers (including Class Counsel's own) spontaneously and permanently losing power during the descaling process. *See* Fraietta Decl. ¶ 3. The facts of the case turned on the relatively complex internal mechanics of the subject coffee makers. *Id.* Class Counsel expended considerable time researching the issue and drafting the Complaint. Class Counsel also spoke with interested potential class members, conducted formal and informal discovery, and engaged in numerous conferences to discuss settlement. *Id.* ¶¶ 3-16. Class Counsel and Plaintiffs also engaged in substantive discovery and dedicated significant time to responding to Keurig's requests. *Id.* ¶ 14.

Class Counsel expended considerable time and labor on the settlement process as well. Class Counsel engaged Judge Scheindlin, prepared a detailed mediation brief, participated in a full-day mediation, and negotiated the Settlement. *Id.* ¶ 8.

Thus, the work performed by Class Counsel to date has been comprehensive and wide ranging. This factor supports the requested fee award.

2.    **Magnitude And Complexity Of The Litigation**

"[C]lass actions have a well-deserved reputation as being most complex." *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998) (internal citation and quotations omitted). This case was no exception. First, Plaintiffs had to overcome a motion to dismiss arguing various failures to state claims for breaches of California and New York consumer law. *See* Fraietta Decl. ¶¶ 5 and 8. Then Plaintiffs went through a lengthy discovery process during which time they engaged experts in anticipation of filing a motion for class certification. *Id.* ¶ 14. And even if that motion was granted, they would have faced a summary judgment motion arguing, among other things: (i) Plaintiffs' lack of standing; (ii) that the alleged problem with the Coffee Makers was not truly a problem; and (iii) that Plaintiffs lacked vertical privity with Keurig. *Id.* ¶ 25. The magnitude and complexity of the litigation further supports the requested fee award.

3.    **The Risk Of Litigation**

This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) (noting risk of non-payment in cases brought on contingency basis). "It is well settled that class actions are notoriously complex and difficult to litigate." *Shapiro v. JPMorgan Chase 7 Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) (internal citation omitted).

"The risks of litigation for Plaintiffs, furthermore, are substantial, as the case involved novel legal issues." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2013 WL 12324362, at *4 (S.D.N.Y. Apr. 10, 2013). Class Counsel took this case on contingency under a statute and legal theory that no other lawyer had pursued. As the Court stated in *In re Remeron Direct Purchaser Antitrust*

11

*litig.,* "[a] determination of a fair fee must include consideration of the sometimes undesirable characteristics of a contingent [class] action, including the uncertain nature of the fee, the wholly contingent outlay of large out-of-pocket sums by plaintiffs, and the fact that the risk of failure and nonpayment in a [class action] are extremely high." *In re Remeron Direct Purchaser Antitrust litig.,* 2005 WL 3008808, at *14 (D.N.J. Nov. 9, 2005) (citations omitted). Indeed, courts recognize the risk of non-payment as a major factor in considering an award of attorney fees. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. litig.,* 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier ...."

This risk was exacerbated by the fact that Defendant retained highly qualified defense counsel who presented well-argued defenses in motion papers and in conferences with the Court and Class Counsel.  Fraietta Decl. ¶ 25.  Nonetheless, Class Counsel embarked on an investigation of Defendant's practices, engaged in motion practice and discovery, and participated in months of discussions with the defense counsel to try and resolve the action.  *Id.* ¶¶ 5-13.  Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case.  *Id.*

The fact that Class Counsel undertook this representation, despite the significant risk of nonpayment, supports the requested fee award.

### 4. The Quality Of Representation

Class action litigation presents unique challenges and – by achieving a meaningful settlement over purported violations of an untested statute – Class Counsel proved that they have the ability and resources to litigate this case zealously and effectively.  Indeed, Class Counsel negotiated a Settlement Fund that may provide for significant cash payments to claimants.

In addition, Class Counsel are well-respected attorneys with significant experience litigating consumer class actions of similar size, scope, and complexity.  Fraietta Decl. ¶¶ 40-41.

Indeed, Class Counsel has been recognized by courts across the country, including this Court, for its expertise.  *See* Firm Resume, Fraietta Decl. Ex. 16; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five[2] class action jury trials since 2008."); *In re Apple Data Privacy Litig.*, Case No. 5:22-cv-07069, ECF No. 104 (N.D. Cal. July 5, 2023) (appointing Bursor & Fisher, P.A. as co-lead Class Counsel in contested leadership application); *In re Sandisk SSDs Litig.*, 2023 WL 10367607, at *1 (N.D. Cal. Dec. 4, 2023) ("Bursor & Fisher, however, has had significant experience representing certified classes (and representing putative classes as interim class counsel)" and appointing its attorneys co-lead counsel in contested leadership application).

Furthermore, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010).  Class Counsel achieved an exceptional result in this case while facing well-resourced and experienced defense counsel.  *See Marsh ERISA Litig.*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

Class Counsel litigated this case efficiently, effectively, and civilly.  The excellent result is a function of the high quality of that work, which supports the requested fee award.

### 5.    The Requested Fee In Relation To The Settlement

Class Counsel seeks fees, costs, and expenses totaling one-third of the $950,000 settlement fund.  As mentioned above, courts in this Circuit routinely approve fee requests for one-third of a

---

[2] Bursor & Fisher has since won a sixth jury verdict in *Perez v. Rash Curtis & Associates*, Case No. 4:16-cv-03396-YGR (N.D. Cal.), for $267 million.

common fund.  *See* cases cited in Argument § I, *supra*.

### 6.    Public Policy Considerations

The final *Goldberger* factor is public policy.  "Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]."  *Shapiro*, 2014 WL 1224666, at *24.  As such, reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who engage in misconduct.  *See id.*  "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk."  *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51).  Further, when individual class members seek a relatively small amount of damages, "economic reality dictates that [their] suit proceed as a class action or not at all."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation related to consumer products issues.  Class action litigation is the most realistic means of vindicating the rights of consumers who experience problems or who are deceived by everyday goods, where the amount of money individually is too small to merit individual litigation.  Thus, the alternative to a class action in this case would have been no enforcement at all, and Defendant's allegedly unlawful conduct would have continued unabated.  This factor thus supports the requested fee award.

### C.    The Requested Attorneys' Fees Are Also Reasonable Under An Optional Lodestar Cross-Check

An optional lodestar cross-check further supports the requested fee.  Courts applying the lodestar method generally apply a multiplier to consider the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved.  *See Wal-Mart Stores, Inc.*,

396 F.3d at 121.  Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Parker v. Time Warner Entertainment Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009).  The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors.  *See Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at *24 ("Additionally, under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.") (internal quotations and citations omitted); *Milstein v. Huck*, 600 F. Supp. 254, 257 (E.D.N.Y. 1984) ("An increase in a fee award is appropriate in situations, such as this one, where an action is prosecuted solely on a contingent fee basis and counsel, faced with a large case containing complex and novel legal issues, successfully recovers a substantial benefit to the class.").

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate."  *See Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-116 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'") (alteration in original and citation omitted).  Here, the hourly rates used by Class Counsel are reasonable compared to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York

legal market.  *See* Fraietta Decl. ¶¶ 35-38.[3]

The hours worked, lodestar fee, and expenses for Class Counsel are set forth in the declaration of Mr. Fraietta, submitted herewith.  In total, through August 11, 2025, Class Counsel billed 560.2 hours, which at their hourly rates amounts to a lodestar of $345,960.  Fraietta Decl. ¶¶ 30-31; Ex. 2.  Counsel also incurred $63,142.60 in expenses.  *Id*. ¶ 33; Ex. 3.  Therefore, the requested fee award reflects a negative multiplier, so the lodestar method also supports the requested fee award.

## II.    THE REQUESTED SERVICE AWARD REFLECTS PLAINTIFFS' ACTIVE INVOLVEMENT IN THIS ACTION AND SHOULD BE APPROVED

"Incentive awards encourage class representatives to participate in class action lawsuits, which are designed to provide a mechanism by which persons, whose injuries are not large enough to make pursuing their individual claims in the court system cost efficient, are able to bind together with persons suffering the same harm and seek redress for their injuries."  *Moses v. New York Times Co.*, 79 F.4th 235, 253 (2d Cir. 2023).  "Such incentive awards often level the playing field and treat differently situated class representatives equitably relative to the class members who simply sit back until they are alerted to a settlement."  *Id.*

Here, Plaintiffs' participation was critical to the ultimate success of the case.  *See* Fraietta Decl. ¶¶ 36-38.  Plaintiffs assisted Class Counsel in investigating this action by detailing their purchases and experiences with the alleged coffee maker defect, supplying supporting documentation, and aiding in drafting the Complaint.  *See* Declaration of Doreen Cahill In Support

---

[3]  The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher,* 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment.") (citation omitted).

of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, Expenses, and Service Award ("Cahill Decl.") ¶¶ 3-6; Declaration of Janet Christman In Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, Expenses, and Service Award ("Christman Decl.") ¶¶ 3-6. During the course of this litigation, Plaintiffs kept in regular contact with their lawyers to receive updates on the progress of the case and to discuss strategy. Finally, Plaintiffs were actively consulted during the settlement process. Cahill Decl. ¶ 7; Christman Decl. ¶ 7.

On these facts, the $5,000 service awards are fair and reasonable. The requested $5,000 is well within the range of service awards approved by other courts in this Circuit. *See, e.g.*, *Cicciarella v. Califia Farms, LLC* Case No. 7:19-cv-08785-CS, ECF No. 27 ¶ 15 (awarding $5,000 service awards to plaintiffs from $750,000 fund); *Carrasco v. Sompo America Insurance Services LLC et al,* Case No. 7-17-cv-07319-CS (awarding $10,000 service fee to plaintiff); *In re Midland Funding LLC Interest Rate Litigation*, Case No. 7:11-cv-08149-LMS, ECF No. 227 (awarding $5,000 service award to plaintiffs); *Norcross*, Case No. 1:23-cv-11153-JPO, ECF No. 36 at ¶ 15 (awarding $5,000 service award in ACAL class settlement); *Charles*, Case No. 1:24-cv-00322-JSR, ECF No. 48 at ¶ 15 (same); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) (awarding $5,000 service payments to class representatives from $800,000 fund); *McMahon v. Olivier Cheng Catering and Events, LLC*, 2010 WL 2399328, at *8-9 (S.D.N.Y. Mar. 3, 2010) (awarding $5,000 service payments to two class representatives from $400,000 fund); *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) approve attorneys' fees, costs, and expenses in the amount of one-third of the settlement fund, or

$316,666.66, (2) grant Plaintiffs a service award of $5,000 each in recognition of their efforts on behalf of the Settlement Class, and (3) award such other and further relief as the Court deems reasonable and just.

Dated: August 11, 2025

Respectfully submitted,

By:    */s/ Philip L. Fraietta*
       Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:   (212) 989-9163
Email:  pfraietta@bursor.com

*Class Counsel*

## LOCAL RULE 7.1(c) CERTIFICATION

Pursuant to Local Rule 7.1(c) I certify that this document contains 5,604 words and therefore complies with the 8,750 word-count limitation set by the Local Rules.

By:    */s/ Philip L. Fraietta*
       Philip L. Fraietta