## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOREEN CAHILL and JANET CHRISTMAN on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KEURIG GREEN MOUNTAIN, INC.,<br><br>Defendant. | Case No. 22-cv-7507-CS |

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) Plaintiffs Doreen Cahill and Janet Christman ("Plaintiffs"); (ii) the Settlement Classes (as defined herein); and (iii) Defendant Keurig Green Mountain, Inc. ("Defendant" or "Keurig"). The Settlement Classes and Plaintiffs are collectively referred to as the "Plaintiffs" unless otherwise noted. The Plaintiffs and the Defendant are collectively referred to herein as the "Parties." This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

A.    On September 1, 2022, Doreen Cahill filed a putative class action complaint in the United States District Court for the Southern District of New York. The complaint alleges that Keurig's K-Supreme, K-Supreme Plus, and K-Supreme SMART coffee makers (the "Coffee Maker(s)") contain a defect that causes a permanent loss of power to the Coffee Makers when descaled according to the directions supplied with the Coffee Makers or with the Keurig

Descaling Solution.  (Dkt. 1.).  The complaint was originally brought against both Keurig and

Bed Bath & Beyond, Inc.  *Id.*  Bed Bath & Beyond was dismissed from the action on June 7,

2023 and takes no part in this Settlement.  (Dkt. 47).

       B.      In response to the complaint, on November 21, 2022, Keurig filed a letter

requesting a pre-motion conference regarding its intent to file a motion to dismiss under Fed. R.

Civ. P. 12(b)(6).  (Dkt. 19).

       C.      On December 12, 2022, Ms. Cahill filed a letter in response to Defendant's

November 21, 2022 letter.  (Dkt. 21).

       D.      The pre-motion conference was conducted on December 19, 2022, and pursuant

to which Ms. Cahill filed the operative First Amended Complaint on January 20, 2023, adding

Janet Christman as a plaintiff along with claims under California law.  (Dkt. 23).

       E.      In response to the Amended Complaint, on March 6, 2023, Defendant filed a

Motion to Dismiss pursuant to Fed. R. Civ. P.  12(b)(6).  (Dkt. 37).  On May 3, 2023, Plaintiffs

filed an Opposition to the Motion to Dismiss.  (Dkt. 43).  And on May 3, 2023, Defendant filed a

Reply in Support of its Motion to Dismiss.  (Dkt. 44).

       F.      The hearing on Defendant's Motion to Dismiss was held on December 20, 2023,

during which Judge Cathy Seibel issued a bench ruling granting in part and denying in part

Defendant's motion.  (Dkt. 55).  Plaintiffs were given leave to amend but declined to do so.

(Dkt. 50).

       G.      An initial scheduling conference was also heard on December 20, 2023, and the

Court issued a Civil Case Discovery Plan and Scheduling Order on December 22, 2023.  (Dkt.

49).

H.      On January 26, 2024, Defendant filed an Answer to the First Amended Complaint, denying the allegations generally and asserting twenty-eight affirmative and other defenses.  (Dkt. 53).

I.      Thereafter, the Parties engaged in discovery, including the exchange of thousands of pages of documents.

J.      Throughout the litigation, the Parties discussed the prospect of settlement.  To that end, the Parties agreed to participate in a private mediation with The Honorable Shira A. Scheindlin (Ret.) of Boies Schiller Flexner, LLP.

K.      On August 20, 2024, the Parties participated in a full-day mediation with Judge Scheindlin.  At the conclusion of the mediation session, the Parties had not reached an agreement.

L.      The Parties continued to engage in good-faith settlement negotiations soon after the mediation's conclusion, working jointly on a Class Action Settlement Term Sheet, which expressly contemplates the creation of this fuller Agreement, and which was executed by the Parties on January 7, 2025.

M.      At all times, Defendant has denied and continues to deny that the Coffee Makers contain any defect that causes the Coffee Makers to lose power when descaled according to instructions provided by Defendant and denies has denied and continues to deny that it breached any warranty or promise and has denied and continues to deny that it committed, or threatened or attempted to commit, any wrongful act or violation of law or duty alleged in the Action, and maintained its opposition to certification of a litigation class.  Defendant  believes that the claims asserted in the Action against Defendant have no merit and that Defendant  would have prevailed at class certification, summary judgment, and/or trial.  Nonetheless, taking into account

the expense, uncertainty and risks inherent in any litigation, Defendant believe  it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement.  This Agreement is a compromise of contested claims, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of Defendant, or any of the Released Parties (defined below), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever or with respect to the certifiability of a litigation class.

   N.  Plaintiffs believe that the claims asserted in the Action against Defendant have merit and that they would have prevailed at class certification, summary judgment, and/or trial. Nonetheless, Plaintiffs and Class Counsel recognize that Defendant has raised factual and legal defenses that present a risk that Plaintiffs may not prevail.  Plaintiffs and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against Defendant through class certification, summary judgment, trial, and any subsequent appeals. Plaintiffs and Class Counsel also have taken into account the uncertain outcome and risks of litigation, especially in complex class actions, as well as the difficulties inherent in such litigation.  Therefore, Plaintiffs believe it is desirable that the Released Claims, as further defined herein, be fully and finally compromised, settled, and resolved with prejudice.  Based on its evaluation, Class Counsel has concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Classes, and that it is in the best interests of the Settlement Classes to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs, the Settlement Classes, and each of them, and Defendant, by and through its undersigned counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## AGREEMENT

1.    **DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1    **"Action"** means *Cahill v. Keurig Green Mountain, Inc.*, Case No. 22-cv-7507-CS, pending in the United States District Court for the Southern District of New York.

1.2    **"Alternate Judgment"** means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Agreement and where none of the Parties elects to terminate this Settlement by reason of such variance.

1.3    **"Cash Award"** means the cash compensation, payable by the Settlement Administrator from funds provided by Defendant, that each Performance Issue Claim Class Member who submits a valid and timely Claim Form shall be entitled to receive.

1.4    **"Claim Form"** means the document substantially in the form attached hereto as Exhibit A, as approved by the Court.  The Claim Form, to be completed by each Performance Issue Claim Class Member who wishes to file a Claim for payment  and each Coffee Maker

Purchaser Class Member who wishes to file a Claim under the extended warranty provided by the Settlement, shall be available in electronic and paper format in the manner described below.

      1.5    **"Claims Deadline"** means the date by which all Claim Forms must be postmarked or submitted electronically in compliance with the instructions on the Claim Form to be considered timely and shall be set as follows:  For Class Members who experienced a permanent loss of power while performing the descaling process prior to the Effective Date, the Claims Deadline shall be 90 Days after the Effective Date; and for Class Members who experienced a permanent loss of power while performing the descaling process after the Effective Date, the Claims Deadline shall be September 30, 2027.

      1.6    **"Class Counsel"** means Philip L. Fraietta of Bursor & Fisher, P.A.

      1.7    **"Class Period"** means October 1, 2020, to the date of Preliminary Approval.

      1.8    **"Class Members"** means all Persons who falls within the definition of either Performance Issue Claim Class Member or Coffee Maker Purchaser Class Member.

      1.9    **"Class Representatives"** means the named Plaintiffs in this Action, Doreen Cahill and Janet Christman.

      1.10    **"Coffee Maker(s)"** means the Keurig K-Supreme, Keurig K-Supreme Plus, or Keurig K-Supreme SMART single serve coffee makers.

      1.11    **"Court"** means the United States District Court for the Southern District of New York, the Honorable Cathy Seibel presiding, or any judge who shall succeed her as the Judge in this Action.

      1.12    **"Defect"** means any operational issues in the Coffee Makers, including loss of power, which occurred in association with the descaling process.

      1.13    **"Defendant"** means Keurig Green Mountain, Inc.

1.14    **"Defendant's Counsel"** means Louis M. Solomon, Nancy Savitt and Robert A. Roth of Reed Smith LLP.

1.15    **"Descaling Solution"** means the descaling solution product sold by Keurig for use in descaling the Coffee Makers**.**

1.16    **"Effective Date"** means the date ten (10) days after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

1.17    **"Escrow Account"** means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to all Parties at a depository institution insured by the Federal Deposit Insurance Corporation.  The Settlement Fund shall be deposited by Defendant into the Escrow Account in accordance with the terms of this Agreement and the money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other:  (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less.  The costs of establishing and maintaining the Escrow Account shall be paid from the  Settlement Fund.

1.18    "**Fee Award***"* means the amount of attorneys' fees and reimbursement of expenses awarded by the Court to Class Counsel, which will be paid out of the  Settlement Fund.

1.19    **"Final"** means one business day following the latest of the following events:  (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals (other than an appeal or appeals solely with respect to the Fee Award), the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all

proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

  **1.20** **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, the Fee Award, and the incentive award to the Class Representatives.

  **1.21** **"Final Judgment"** means the Final Judgment and Order to be entered by the Court approving the Agreement after the Final Approval Hearing.

  **1.22** **"Limited Warranty"** means the  One-Year Limited Warranty Defendant provided for the Coffee Makers stating the terms, conditions, exclusions, limitations and instructions  for obtaining warranty service.

  **1.23** **"Notice"** means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Classes substantially in the manner set forth in this Agreement, which is consistent with the requirements of Due Process, Rule 23, and is substantially in the form of Exhibits B, C, and D hereto.

  **1.24** **"Notice Date"** means the date by which the Notice set forth in Paragraph 4.1 is complete, which shall be no later than twenty-eight (28) days after Preliminary Approval.

  **1.25** **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Classes must be made, which shall be designated as a date no later than sixty (60) days after the Notice Date and no sooner than fourteen (14) days after papers supporting the Fee Award are filed with the Court and posted to the settlement website listed in Paragraph 4.1(d), or such other date as ordered by the Court.

1.26    **"Person"** shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, affiliates, parents, predecessors, successors, representatives, or assigns, subsidiaries, insurers, and their past, present and future directors, officers, shareholders, members, faculty, employees, agents, and attorneys both individually and in their capacities as directors, officers, shareholders, members, employees, agents, and attorneys.  "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General office.

1.27    **"Plaintiffs"** means Doreen Cahill, Janet Christman, and the Members of the Settlement Classes.

1.28    **"Preliminary Approval"** means the Court's certification of the Settlement Classes for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the form and manner of the Notice.

1.29    **"Preliminary Approval Order"** means the Order preliminarily approving the Settlement Agreement, certifying the Settlement Classes for settlement purposes, and directing notice thereof to the Settlement Classes, which will be agreed upon by the Parties and submitted to the Court in conjunction with Plaintiffs' motion for preliminary approval of the Agreement.

1.30    **"Released Claims"** means any and all causes of action, suits, claims, liens, demands, judgments, costs, damages, obligations, attorney fees (except as provided for in the Class Settlement), and all other legal responsibilities in any form or nature, including but not limited to, all claims relating to or arising out of state, local, or federal statute, ordinance, regulation, or claim at common law or in equity, whether past, present, or future, known or

unknown, asserted or unasserted, arising out of or in any way allegedly related to the Coffee Makers and the Keurig Descaling Solution, including all claims that were brought or could have been brought in the Action.

1.31   **"Released Parties"** means Defendant, Keurig Green Mountain, Inc., and all of its current, former, and future parents, predecessors, successors, affiliates, assigns, subsidiaries, divisions, or related corporate entities, and all of their respective current, future, and former employees, officers, directors, shareholders, assigns, agents, trustees, administrators, executors, insurers, attorneys, and customers, including retailers  wholesalers and distributors.

1.32   **"Releasing Parties"** means Plaintiffs, those Members of the Settlement Classes who do not timely opt out of the Settlement Classes, and all of their respective present or past heirs, executors, family members, lenders, funders, payors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, limited liability companies, partnerships and corporations.

1.33   **"Settlement Administration Expenses"** means the expenses incurred by the Settlement Administrator in providing Notice (including CAFA notice), responding to inquiries from members of the Settlement Classes, receiving and administering Claim Forms and information, mailing checks, and related services, paying taxes and tax expenses related to the Settlement Fund (including all federal, state or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in connection with determining the amount of and paying any taxes owed and expenses related to any tax attorneys and accountants).

**1.34** **"Settlement Administrator"** means Epiq, or such other reputable administration company that has been selected jointly by the Parties and approved by the Court to perform the duties set forth in this Agreement, including but not limited to serving as Escrow Agent for the Settlement Fund, overseeing the distribution of Notice, handling all approved payments out of the Settlement Fund, and handling the determination, payment and filing of forms related to all federal, state and/or local taxes of any kind (including any interest or penalties thereon) that may be owed on any income earned by the Settlement Fund. Class Counsel's assent to this Agreement shall constitute consent on behalf of each and every Member of the Settlement Classes as defined herein to disclose to Class Counsel and the Settlement Administrator all information required by the Settlement Administrator to perform the duties and functions ascribed to it herein. .

**1.35** **"Settlement Classes"** means both the Performance Issue Claim Class and the Coffee Maker Purchaser Class.

**1.35.1** **"Performance Issue Claim Class"** means (1) all Persons in the United States (including its states, districts or territories) who are not excluded below in this paragraph and who lodged complaints to Keurig claiming that a Coffee Maker experienced the Defect within the first 12 months of purchase between October 1, 2020 to the date of Preliminary Approval and were not provided with a remedy by Keurig pursuant to its Limited Warranty and (2) all Persons in the United States (including its states, districts or territories) who are not excluded below in this paragraph and can demonstrate valid claims that a Coffee Maker manifested operational issues associated with the descaling process. Excluded from the

Performance Issue Claim Class are (1) any Persons whose Coffee Makers are still within Defendant's original Limited Warranty period or the extended Limited Warranty period set forth below in paragraph 2.1(a);  (2) any Judge or Magistrate presiding over this Action and members of their families; (3) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, and attorneys; (4) Persons who properly execute and file a timely request for exclusion from the class; and (5) the legal representatives, successors or assigns of any such excluded Persons.

1.35.2  **"Performance Issue Claim Class Member"** means a Person who falls within the definition of the Performance Issue Claim Class as set forth above and who has not submitted a valid request for exclusion.

1.35.3  **"Coffee Maker Purchaser Class"** means all Persons in the United States (including its states, districts or territories) who purchased one of the Coffee Makers, or Descaling Solution for use with the Coffee Makers, from two years prior to the date of Preliminary Approval up to the date of Preliminary Approval, excluding Performance Issue Claim Class Members and all Persons in the United States (including its states, districts or territories) who lodged complaints to Keurig claiming that a Coffee Maker experienced the Defect during the Class Period and who were provided with a remedy by Keurig pursuant to its Limited Warranty.  Also excluded from the Coffee Maker Purchaser Class are (1) any Judge or Magistrate

presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, and attorneys; (3) Persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded Persons.

  **1.35.4 "Coffee Maker Purchaser Class Member"** means a Person who falls within the definition of the Coffee Maker Purchaser Class as set forth above and who has not submitted a valid request for exclusion.

  **1.36 "Settlement Fund"** means the non-reversionary fund that shall be established by or on behalf of Defendant in the total amount of nine hundred and fifty thousand dollars ($950,000.00 USD) to be deposited into the Escrow Account, according to the schedule set forth herein, plus all interest earned thereon. From the Settlement Fund, the Settlement Administrator shall pay all Cash Awards to Performance Issue Claim Class Members, Settlement Administration Expenses and taxes, any incentive award to the Class Representatives, any Fee Award to Class Counsel, and any other costs, fees or expenses approved by the Court. The **"Available Settlement Fund"** is the amount remaining in the Settlement Fund after payment of an approved Fee Award to Class Counsel, approved Settlement Administration Expenses, any approved incentive award to the Class Representatives, and any other costs, fees or expenses approved by the Court. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the listed payments are made. The Settlement Fund includes all interest that shall accrue on the sums

deposited in the Escrow Account.  The Settlement Administrator shall be responsible for all tax

filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may

be due on such earnings.  The Settlement Fund represents the total extent of Defendant's

monetary obligations under this Agreement.  The payment of the sums into the Settlement Fund

by Defendant fully discharges the Defendant and the other Released Parties' financial obligations

(if any) in connection with the Settlement, meaning that no Released Party shall have any other

obligation to make any payment into the Escrow Account or to any Performance Issue Claim

Class Member, or any other Person, under this Agreement.  In no event shall the total monetary

obligation with respect to this Agreement on behalf of Defendant exceed nine hundred and fifty

thousand dollars ($950,000.00 USD), and in no event shall the Settlement Fund or any portion

thereof revert to Defendant.

**2.    SETTLEMENT RELIEF.**

As consideration for the Settlement described herein, Defendant will provide to Members

of the Settlement Classes certain warranty and monetary benefits as set forth below.  Plaintiffs

understand and agree that Plaintiffs and Members of the Settlement Classes would not receive

the monies and/or benefits specified in this Agreement, except for Plaintiffs' execution of this

Agreement and the fulfillment of the promises contained herein.

**2.1    Warranty Extensions to Coffee Maker Purchaser Class Members**

(a)    Upon the Effective Date, Defendant shall extend by one (1) year the

expiration date of its Limited Warranty for the Coffee Maker Purchaser Class as follows:

Defendant shall provide to each Coffee Maker Purchaser Class Member who purchased their

Coffee Makers within two years of the date of Preliminary Approval up to the date of

Preliminary Approval  an extended warranty period of 12 additional months from date of

purchase (24 months total from date of purchase) covering any Defect that caused or causes a permanent loss of power while performing the descaling process.

      (b)     Coffee Maker Purchaser Class Members may make a warranty claim with the Settlement Administrator by the Claims Deadline, which:

      (1) For Coffee Maker Purchaser Class Members who experienced a permanent loss of power while performing the descaling process prior to the Effective Date shall be 90 Days after the Effective Date, and

      (2) (2) For Coffee Maker Purchaser Class Members who experienced a permanent loss of power while performing the descaling process after the Effective Date, shall be September 30, 2027.

By way of example, a Coffee Maker Purchaser Class Member who purchased a Coffee Maker on January 1, 2024 and who experienced a permanent loss of power while performing the descaling process before the Effective Date may submit a warranty claim to the Settlement Administrator within 90 days after the Effective Date. A Coffee Maker Purchaser Class Member who purchased a Coffee Maker on January 1, 2025 and who experienced a permanent loss of power while performing the descaling process within the extended warranty period, but after the Effective Date, may submit a warranty claim to the Settlement Administrator by September 30, 2027.

**2.2    Payments to Performance Issue Claim Class Members.**

(a)    Defendant shall within fifteen (15) days following Preliminary Approval pay or cause to be paid into the Escrow Account the amount of the Settlement Fund ($950,000.00 USD), specified in Paragraph 1.31 of this Agreement.

(b)    Each Performance Issue Claim Class Member who submits a valid and timely Claim Form by the Claims Deadline will receive a *pro rata* payment from the Settlement Fund.  The *pro rata* payment for each Performance Issue Claim Class Member will be equal to the Available Settlement Fund divided by the total number of claims made by Performance Issue Claim Class Members.  The *pro rata* payment for each Person, no matter the number of claims they may have made, shall not exceed a total $250.00.  The Notice will give Performance Issue Claim Class Members the ability to opt via the Claim Form to receive the Cash Award by Venmo, PayPal, Zelle, or check.

(c)    Performance Issue Claim Class Members included in Bates Numbers CAHILL000317-000348 may file a claim using the Claim Form for one (1) Coffee Maker without proof of manifestation of the Defect.   Performance Issue Claim Class Members may also submit a claim for other Coffee Makers of theirs that manifested a performance issue relating to the Defect during the Class Period.

(d)    Performance Issue Claim Class Members not included in the Bates Numbers CAHILL000317-000348 , or those included in  Bates Numbers CAHILL000317-000348  making claims for additional Coffee Makers must provide proof of manifestation of a loss of power during descaling caused by the Defect with their completed Claim Form.  Proof of manifestation shall be substantially the same as required under Keurig's warranty replacement procedures.

(e)     Payments to all Performance Issue Claim Class Members shall be made within ninety (90) days after the Effective Date.

(f)     All Cash Awards issued to Performance Issue Claim Class Members via check will state on the face of the check that it will expire and become null and void unless cashed within one hundred and eighty (180) days after the date of issuance.  To the extent that a check issued to a  Performance Issue Claim Class Member is not cashed within one hundred and eighty (180) days after the date of issuance, such funds shall revert to the Settlement Fund and be distributed to a *cy pres* recipient to be selected jointly by Class Counsel and Defendant (who agree to work together in good faith to identify an acceptable *cy pres* recipient) ,and approved by the Court.

(g)     Except as set forth below in the event of termination, in no event shall any funds revert to Defendant.  In the event that the Settlement Fund is not exhausted by the filing of Claims, the payment of approved Settlement Administration Expenses, the payment of the Fee Award to Class Counsel, and the payment of any approved incentive award to the Class Representatives, any remaining funds will be distributed to a *cy pres* recipient to be selected selected jointly by Class Counsel and Defendant (who agree to work together in good faith to identify an acceptable *cy pres* recipient) ,and approved by the Court.

## 3.     RELEASE AND  COVENANT NOT TO SUE.

3.1     The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

3.2     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

**3.3**    Notwithstanding any other provision of this Agreement, nothing in this Agreement will prevent any Released Party from pleading this Settlement Agreement as a full and complete defense to any action, suit, or other proceeding that has been or  may be instituted, prosecuted, or attempted with respect to any of the Released Claims and may be filed, offered, and received into evidence, and otherwise used for such defense.

**3.4**    Plaintiffs also covenant not to sue any Released Party with respect to any Released Claim, and agree that Plaintiffs shall be permanently barred and enjoined from commencing, maintaining, prosecuting, causing, cooperating with, advising to be commenced or maintained, or encouraging any action, suit, proceeding, or claim in any court, tribunal, administrative agency, regulatory body, arbitrator, or other body in any jurisdiction against any Released Party based in whole or in part upon, arising out of, or in any way connected or related to any Released Claim. Released Parties shall be entitled to seek and recover their costs and reasonable attorneys' fees incurred in the event a Plaintiff brings a Released Claim against any of them. Released Parties shall be entitled to recover any such costs and fees either from the Released-Claim Fund or directly from the Plaintiff bringing a Released Claim, at the option of Released Parties.

**4.    NOTICE TO THE CLASS.**

**4.1**    The Notice Plan shall consist of the following:

**(a)**    *Settlement Classes List*.  No later than  days from the thirty (30) days from execution of this Settlement Agreement, Defendant will produce, subject to a confidentiality agreement and court order that strictly restricts it use to providing Notice of the Preliminary Approval of Class Settlement, a list or electronic data from its records that includes, to the extent available from its records, the names and last known email and postal addresses,

belonging to persons within the Settlement Classes. This list shall include to the extent available, the names and last known email and postal addresses, for all Performance Issue Claim Class Members who lodged complaints with Keurig in Bates Numbers CAHILL000317-000348 and did not receive warranty relief. This list will be provided to the Settlement Administrator, who shall be subject to the the confidentiality agreement and court order, solely for the purpose of giving notice to the Members of the Settlement Classes, with a copy to Plaintiffs' Counsel. The list and / or electronic data shall be called the "Class List." and shall not be used for any purpose other than providing such notice.

(b)    *Direct Notice via Email.* No later than twenty-one (21) days from entry of the Preliminary Approval Order, the Settlement Administrator shall send Notice via email substantially in the form attached as Exhibit B to all Members of the Settlement Classes for whom an email address is in the Class List. In the event transmission of email notice results in any notification that the email was not delivered ("bounce-backs,") the Settlement Administrator shall, if possible, correct any issues that may have caused the "bounce-back" to occur and make a second attempt to re-send the email notice.

(c)    *Direct Notice via U.S. Mail.* No later than twenty-eight (28) days from entry of the Preliminary Approval Order, the Settlement Administrator shall send notice substantially in the form attached as Exhibit C via First Class U.S. Mail to all persons on the Settlement Classes List who did not receive an email pursuant to Paragraph 4.1(b), above.

(d)    *Reminder Notices.* Both thirty (30) days prior to the Claims Deadline and seven (7) days prior to the Claims Deadline, the Settlement Administrator shall send Notice via email substantially in the form attached as Exhibit B (with minor, non-material modifications to indicate that it is a reminder email rather than an initial notice), along with an electronic link to

19

the Claim Form, to all Class Members for whom a valid email address is available in the Settlement Classes List identified in 4.1(a) above.

(e) *Settlement Website.* Within ten (10) days from entry of the Preliminary Approval Order, Notice shall be provided on a website at an available settlement URL (such as, for example, www.ksupremesettlement.com) which shall be obtained, administered and maintained by the Settlement Administrator and shall provide Members of the Settlement Classes with ability to submit Claim Forms and to update their mailing addresses. Copies of this Settlement Agreement, the long-form Notice, and other pertinent documents and Court filings pertaining to the Settlement (including the motion for attorneys' fees upon its filing), shall be provided on the Settlement Website. The Notice provided on the Settlement Website shall be substantially in the form of Exhibit D hereto.

(f) *Digital Publication Notice.* Within thirty-five (35) days from the entry of the Preliminary Approval Order, Class Notice will be provided by internet banner advertisements in locations to be agreed upon by the Parties, which will link to the Settlement Website, and/or social media to be agreed upon by the Parties which will link to the Settlement Website.

(g) *CAFA Notice.* Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall cause to be served upon the Attorneys General of each U.S. State in which Members of the Settlement Classes reside, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law, subject to Paragraph 5.1 below.

4.2     The Notice shall advise the Settlement Classes of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its

terms. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making the objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection through the Court's CM/ECF system, and (b) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

4.3     Any Member of the Settlement Classes who intends to object to this Agreement must present the objection in writing, which must be personally signed by the objector, and must include: (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Member of one of the Settlement Classes; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys"); and (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules).

4.4     If a Member of the Settlement Classes or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal,

21

without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received.

4.5     A Member of the Settlement Classes may request to be excluded from either of the Settlement Classes by sending a written request postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.  To exercise the right to be excluded, a Person in either of the Settlement Classes must timely send a written request for exclusion to the Settlement Administrator providing his/her name and address, a signature, the name and number of the case, and a statement that he or she wishes to be excluded from one of the Settlement Classes for purposes of this Settlement.  A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s) serving such a request shall be a member(s) of the appropriate Settlement Class and shall be bound as a Member of the Settlement Classes by this Agreement, if approved.  Any Member of the Settlement Classes who validly elects to be excluded from this Agreement shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement.  The request for exclusion must be personally signed by each Person requesting exclusion.  So-called "mass" or "class" opt-outs shall not be allowed.  To be valid, a request for exclusion must be postmarked or received by the date specified in the Notice.

4.6     The Final Approval Hearing shall be no earlier than ninety (90) days after the Notice Plan described in Paragraph 4.1 is provided.

4.7     Any Members of the Settlement Classes who do not, in accordance with the terms and conditions of this Agreement, meet the requirements for exclusion from the Settlement

Classes will be bound by all of the terms of this Agreement, including the terms of the Final Judgment to be entered in the Action and the Releases provided for in the Agreement, and will be barred from bringing any action against any of the Released Parties concerning the Released Claims.

## 5.    SETTLEMENT ADMINISTRATION.

5.1    Class notice will be provided by a well-established claims administrator, with a media plan designed to achieve no less than 75% reach, which shall include direct notice by email and/or postal mail to all Class Members for whom Defendant possesses such information.

5.2    The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement in a rational, responsive, cost effective, and timely manner.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement.  The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with regular reports at weekly intervals containing information concerning Notice, administration, and implementation of the Settlement Agreement.  Should the Court request, the Parties shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Settlement Fund paid to Members of the Settlement Classes.  Without limiting the foregoing, the Settlement Administrator shall:

(a)    Forward to Defendant's Counsel, with copies to Class Counsel, all original documents and other materials received in connection with the administration of the Settlement, and all copies thereof, within thirty (30) days after the Objection/Exclusion Deadline;

(b)    Provide Class Counsel and Defendant's Counsel with drafts of all administration related documents, including but not limited to CAFA Notices, follow-up class notices or communications with Members of the Settlement Classes, telephone scripts, website postings or language or other communications with the Settlement Classes, at least five (5) days before the Settlement Administrator is required to or intends to publish or use such communications, unless Class Counsel and Defendant's Counsel agree to waive this requirement in writing on a case by case basis; and

(c)    Receive requests to be excluded from a Settlement Class and other requests and promptly provide to Class Counsel and Defendant's Counsel copies thereof.  If the Settlement Administrator receives any exclusion forms or other requests after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel.

5.3    In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from Class Counsel or any Members of the Settlement Classes.  The Settlement Administrator shall employ reasonable procedures to screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or fraud, including by cross-referencing Claim Forms with the   list provided by Defendant. To the extent that any Person who does not appear in the  list submits a Claim Form, the Settlement Administrator shall conduct a reasonable investigation to determine whether the Person is a Class Member before approving or rejecting that claim.

5.4     Defendant, the Released Parties, and Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Class Counsel, or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the allocation of Settlement Fund to Performance Issue Claim Class Members or the implementation, administration, or interpretation thereof; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, Tax Expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

5.5     All taxes and tax expenses shall be paid out of the Settlement Fund and shall be timely paid by the Settlement Administrator pursuant to this Agreement and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with this Agreement and in all events shall reflect that all taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Released Parties shall have no responsibility or liability for the acts or omissions of the Settlement Administrator or its agents with respect to the payment of taxes or tax expenses.

6.     **TERMINATION OF SETTLEMENT.**

6.1     Subject to Paragraphs 9.1-9.3 below, Defendant or the Class Representatives on behalf of the Settlement Classes, shall have the right to terminate this Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within

twenty-one (21) days of any of the following events:  (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) the date upon which an Alternate Judgment, as defined in Paragraph 9.1(d) of this Agreement is modified or reversed in any material respect by the Court of Appeals or the Supreme Court .

## 7.    PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER.

7.1     Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Agreement; certification of the Settlement Classes for settlement purposes only; appointment of Class Counsel and the Class Representatives; and entry of a Preliminary Approval Order, which order shall set a Final Approval Hearing date and approve the Notice for dissemination substantially in the form of Exhibits B, C, and D hereto.  The Preliminary Approval Order shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) so long as they are consistent in all material respects with the terms of the Settlement Agreement and do not limit or impair the rights of the Settlement Classes or materially expand the obligations of Defendant.

7.2     At the time of the submission of this Agreement to the Court as described above, Class Counsel shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

**7.3** After Notice is given, the Parties shall request and seek to obtain from the Court a Final Judgment, which will (among other things):

**(b)** find that the Court has personal jurisdiction over all Members of the Settlement Classes and that the Court has subject matter jurisdiction to approve the Agreement, including all exhibits thereto;

**(c)** approve the Settlement Agreement and the proposed settlement as fair, reasonable, and adequate as to, and in the best interests of, the Members of the Settlement Classes; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and Releasing Parties;

**(d)** find that the Notice implemented pursuant to the Agreement (1) constitutes the best practicable notice under the circumstances; (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Classes of the pendency of the Action, their right to object to or exclude themselves from the proposed Agreement, and to appear at the Final Approval Hearing; (3) is reasonable and constitutes due, adequate, and sufficient notice to all Persons entitled to receive notice; and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

**(e)** find that the Class Representatives and Class Counsel adequately represent the Settlement Classes for purposes of entering into and implementing the Agreement;

    **(f)**     dismiss the Action (including all individual claims and Claims of the Settlement Classes presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

    **(g)**     incorporate the Release set forth above, make the Release effective as of the date of the Effective Date, and forever discharge the Released Parties as set forth herein;

    **(h)**     permanently bar and enjoin all Members of the Settlement Classes who have not been properly excluded from the Settlement Classes from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction based on the Released Claims;

    **(i)**     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

    **(j)**     incorporate any other provisions, as the Court deems necessary and just.

**8.**    **CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; INCENTIVE AWARD.**

    **8.1**     Defendant agrees that Class Counsel is entitled to reasonable attorneys' fees and unreimbursed expenses incurred as the Fee Award from the Settlement Fund. The amount of the Fee Award shall be determined by the Court based on petition from Class Counsel. Class Counsel has agreed, with no consideration from Defendant, to limit their request for attorneys' fees and unreimbursed costs to a one-third of the Settlement Fund.  Defendant may challenge the amount requested. Should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Section shall

remain in the Settlement Fund and be distributed to Performance Issue Claim Class Members as settlement payments.

**8.2** The Fee Award shall be payable by the Settlement Administrator within ten (10) days after entry of the trial court's Final Judgment, subject to Class Counsel executing the Undertaking Regarding Attorneys' Fees and Costs (the "Undertaking") attached hereto as Exhibit E, and providing all payment routing information and tax I.D. numbers for Class Counsel. Payment of the Fee Award shall be made from the Settlement Fund by wire transfer to Bursor & Fisher, P.A., in accordance with wire instructions to be provided by Bursor & Fisher, P.A., and completion of necessary forms, including but not limited to W-9 forms. Notwithstanding the foregoing, if for any reason the trial court's Final Judgment is reversed or rendered void as a result of an appeal(s) then Class Counsel shall return such funds to the Defendant. Additionally, should any parties to the Undertaking dissolve, merge, declare bankruptcy, become insolvent, or cease to exist prior to the final payment to Class Members, those parties shall execute a new undertaking guaranteeing repayment of funds within 14 days of such an occurrence.

**8.3** Defendant agrees that, subject to Court approval, the Settlement Administrator may pay incentive awards to the Class Representatives from the Settlement Fund, in addition to any settlement payment as a result of an Approved Claim pursuant to this Agreement, and in recognition of their efforts on behalf of the Settlement Classes, in the amount of five thousand dollars ($5,000.00) each. Defendant shall not object to or otherwise challenge, directly or indirectly, Class Counsel's application for the incentive award to the Class Representatives if limited to this amount. Class Counsel, in turn, agrees to seek no more than this amount from the Court as the incentive award for the Class Representatives. Should the Court award less than

this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund.  Such award shall be paid from the Settlement Fund (in the form of a check to the Class Representatives that is sent care of Class Counsel), within five (5) business days after the Effective Date.

9.      **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

9.1      The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

(a)      The Parties and their counsel have executed this Agreement;

(b)      The Court has entered the Preliminary Approval Order;

(c)      The Court has entered an order finally approving the Agreement, subject to appeal, following Notice to the Settlement Classes and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, subject to appeal, or a judgment consistent with this Agreement in all material respects;

(d)      The time for appeal has passed and Final Judgment has become Final which, if there is an appeal or appeals (other than an appeal or appeals solely with respect to the Fee Award), shall be the date of completion, in a manner that finally affirms and leaves in place the trial court's Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or  the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari, and

**(e)**    As defined above, or, in the event that the Court enters an Alternate Judgment, such Alternate Judgment becomes Final.

**9.2**    If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 6.1 unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement.  If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Settling Parties.  Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel and/or the incentive award set forth in Paragraph 8 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

**9.3**    If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1-6.2 or 9.1-9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement.  In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into.  Within five (5) business days after written notification of termination as provided in this Agreement is sent to the other Parties, the Settlement Fund (including accrued interest thereon), less any Settlement Administration costs actually incurred, paid or payable and less any taxes and tax expenses paid, due or owing, shall be refunded by the Settlement Administrator to Defendant, based upon

written instructions provided by Defendant's Counsel.  In the event Defendant terminates this

Agreements because of Plaintiffs' or Class Counsel's breach of this Agreement, Class Counsel

shall refund to Defendant, based upon written instructions provided by Defendant's Counsel, any

Settlement Administration costs actually incurred prior to termination.  In the event that the Final

Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered

void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise

terminated for any other reason, Class Counsel shall, within thirty (30) days repay to Defendant,

based upon written instructions provided by Defendant's Counsel, the full amount of the

attorneys' fees and costs paid to Class Counsel from the Settlement Fund, including any accrued

interest.  In the event the attorney fees and costs awarded by the Court or any part of them are

vacated, modified, reversed, or rendered void as a result of an appeal, Class Counsel shall within

thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's

Counsel, the attorneys' fees and costs paid to Class Counsel and/or Class Representatives from

the Settlement Fund, in the amount vacated or modified, including any accrued interest.

**10.    MISCELLANEOUS PROVISIONS.**

**10.1**    The Parties (a) acknowledge that it is their intent to consummate this Settlement

Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to

the extent reasonably necessary to effectuate and implement all terms and conditions of this

Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and

conditions of this Agreement, to secure final approval, and to defend the Final Judgment through

any and all appeals.  Class Counsel and Defendant's Counsel agree to cooperate with one another

in seeking Court approval of the Settlement Agreement, entry of the Preliminary Approval

Order, and the Final Judgment, and promptly to agree upon and execute all such other

documentation as may be reasonably required to obtain final approval of the Agreement.

**10.2**    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs, the Settlement Classes and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.

**10.3**    The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released.  The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

**10.4**    Whether or not the Effective Date occurs, or the Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein or any term, provision or definition therein, nor any act performed or communication made  or document executed in the course of negotiating, implementing or seeking approval pursuant to or in furtherance of this Agreement or the settlement:

      **(a)**    is, may be deemed, or shall be used, offered or received in any civil, criminal or administrative proceeding in any court, administrative agency, arbitral proceeding or other tribunal against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the definition or scope of any term or provision, the

reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them.  Defendant, while continuing to deny all allegations of wrongdoing and disclaiming all liability with respect to all claims, considers it desirable to resolve the action on the terms stated herein to avoid further expense, inconvenience, and burden, and therefore has determined that this settlement is in Defendant's best interests.  Any public statements made by Plaintiff or Class Counsel will be consistent with this paragraph;

        **(b)**     is, may be deemed, or shall be used, offered or received against any Released Party, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

        **(c)**     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, or supporting the certification of a litigation class, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement.  Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or

reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

**(d)** is, may be deemed, or shall be construed against Plaintiffs, the Settlement Classes, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

**(e)** is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs, the Settlement Classes, the Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiffs' claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

**10.5** The Parties acknowledge that (a) any certification of the Settlement Classes as set forth in this Agreement, including certification of the Settlement Classes for settlement purposes in the context of Preliminary Approval, shall not be deemed a concession that certification of a litigation class is appropriate, or that the Settlement Class definitions would be appropriate for a litigation class, nor would Defendant be precluded from challenging class certification in further proceedings in the Action or in any other action if the Settlement Agreement is not finalized or finally approved; (b) if the Settlement Agreement is not finally approved by the Court for any reason whatsoever, then any certification of the Settlement Classes will be void, the Parties and the Action shall be restored to the *status quo ante*, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action or in any other action; and (c) no agreements made by or entered into by Defendant in connection with the

Settlement may be used by Plaintiffs, any Person in the Settlement Classes, or any other Person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other judicial proceeding.

10.6    No Person or entity shall have any claim against the Class Representatives, Class Counsel, the Settlement Administrator or any other agent designated by Class Counsel, or the Released Parties and/or their counsel, arising from distributions made substantially in accordance with this Agreement.  The Parties and their respective counsel, and all other Released Parties shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

10.7    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.8    The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

10.9    All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

10.10    This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein, including, without limitation, the Term Sheet executed on January 8, 2025.  No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and

memorialized in such documents.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

**10.11**  Except as otherwise provided herein, each Party shall bear its own costs.

**10.12**  Plaintiffs represent and warrant that they have not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party and that they are fully entitled to release the same.  Plaintiffs further represent and warrant that they have not filed, caused to be filed, or presently are a party to any claim against Defendant, except the Action, which will be dismissed with Prejudice pursuant to the terms of this Agreement.  Plaintiffs agree to seek approval of this Agreement and dismissal of this Action with prejudice in its entirety as outlined in this Agreement.

**10.13**  Unless otherwise agreed in writing, Plaintiffs and Class Counsel shall not issue any press releases, website advertisements, or statements to the media or otherwise in which Defendant is identified or which might directly or indirectly suggest that Defendant has engaged in wrongful conduct.  This Paragraph does not preclude Class Counsel from advising any Members of the Settlement Classes.  If Plaintiffs or Class Counsel is contacted by anyone other than a member of the Settlement Classes regarding this Agreement, they shall respond by stating only that "the matter has been resolved."

**10.14**  Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

**10.15**   This Agreement may be executed in one or more counterparts.  Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

**10.16**   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

**10.17**   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

**10.18**   This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of New York without giving effect to its conflict of laws provisions.

**10.19**   Plaintiffs and Class Counsel shall continue to treat as confidential all financial and class-related materials provided to Class Counsel as part of the Parties' mediation and Settlement.  Upon dismissal of this action, Plaintiffs and Class Counsel shall permanently delete from their files and/or return to Defendant's counsel any confidential files produced by Defendant in this Action.  Provided, however, that nothing herein shall preclude Class Counsel from describing those materials in public Court filings to the extent that such description of confidential information is necessary to obtain Court approval of the Settlement and to the extent that there is no reasonable alternative to including such description of confidential information the public filings, such as filing such description with redactions or under seal .

**10.20**   This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties.  Because all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

**10.21**   Once the Parties and their counsel execute this Agreement, the Court will resolve any and all disputes that arise as to the interpretation or enforcement of this Agreement.

**10.22**   Where this Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:  Philip L. Fraietta, Bursor & Fisher, P.A., 1330 Avenue of the Americas, 32nd Floor, New York, NY 10016; Louis M. Solomon, Reed Smith, LLP, 599 Lexington Avenue New York, NY 10022.

**REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK.  SIGNATURE PAGES TO FOLLOW**

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: 16/06/25 _____

DOREEN CAHILL

By: _____
Doreen Cahill, individually and as representative of the Class

Dated: 16/06/25 _____

JANET CHRISTMAN

By: _____
Janet Christman, individually and as representative of the Class

Dated: 6/16/2025 _____

KEURIG GREEN MOUNTAIN, INC.

By: *Amanda Praestholm*

Name: Amanda Praestholm _____

Title: Corporate Counsel _____

**IT IS SO STIPULATED BY COUNSEL:**

Dated: 16/06/25 _____

BURSOR & FISHER, P.A.

By: _____

Philip L. Fraietta
1330 Avenue Of The Americas
32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

*Attorneys for Class Representatives and the Settlement Class*

Dated: June 16, 2025

**REED SMITH LLP**

By: _____

Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
(212) 549-0400
lsolomon@reedsmith.com

*Attorneys for Defendant Keurig Green Mountain, Inc.*